SHORTESS, Judge.
According to the records of the Lallie Kemp Charity Hospital (Kemp), operated by the Department of Health and Human Resources of the State of Louisiana[1], John Salter (plaintiff), a long-time patient, presented himself at Kemp on March 18, 1986, and was given a prescription for Coumadin by Dr. M.R. Eichman. On May 9, 1986, he was admitted to an intensive care unit at Kemp after suffering a fall and hurting his right arm. He had a large hematoma on his right arm. He was immediately sent to Charity Hospital in New Orleans where he remained until May 18, 1986. After returning home he received therapy from the Capitol Home Care for nearly three months until August, 1986. He died from unrelated causes on April 15, 1988.
Plaintiff filed suit for damages on April 16, 1987. After his death Geraldine Williams, the administratrix of his succession, was substituted as party plaintiff.
Coumadin is a blood-thinning medication. Dr. Donn Bowers, an internist, testified that plaintiffs records, which he reviewed in detail, showed no diagnosis to warrant Coumadin therapy. Dr. Bowers was of the opinion that his medical history, which included kidney problems, congestive heart failure, and Motrin therapy for arthritis, should have made the prescribing physician most wary before using this drug. Dr. Bowers felt that plaintiffs hematoma and right arm problems were caused by the Coumadin use. He also felt that the monitoring done after the Coumadin therapy began fell below the minimal standards of medical care.
The trial court found that the sole fault for plaintiffs problems was the negligence of Kemp and awarded general damages of $200,000.00 to him for the disability, depression, and loss of enjoyment of life which he endured for the last two years of his life.
The state has not appealed the trial court’s finding on fault. The only issue on appeal is the state’s contention that the award is unreasonably excessive.
Dr. Kenneth Adatto, an orthopedic surgeon, was of the opinion that the Coumadin overdose caused the hematoma which resulted in a neuropraxia to the right arm, decreased function of the radial nerve, and an associated wrist drop. He characterized plaintiff’s problem as permanent and called it a classic radial nerve palsy. He felt that plaintiff was not a candidate for surgery because of his advanced age and general condition. He described plaintiff as “an old 85.”
Plaintiff’s witnesses described him, however, as an elderly gentleman who got around the neighborhood on a daily basis without significant problems and as a person who was relatively independent before his fall in May and subsequent hospital stay.
Was the award of general damages unreasonably excessive and an abuse of the trial court’s great discretion? Our standard of review was recently restated by the supreme court in Rosell v. ESCO, 549 So.2d 840 (La.1989). Therein, the court stated:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the [fact finder] can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable *996 fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
549 So.2d at 844-845 (citations omitted).
Plaintiff’s medical records from Kemp and Charity Hospital in New Orleans verify Dr. Adatto’s opinion that plaintiff was an “old 85.” Beginning in the early 1970’s, he was treated for urinary problems, including complaints of nighttime urinary dribbling, urethral stricture, and incontinence, which existed until his death. From 1972 through 1980, he was seen and treated for prostate problems which were ultimately alleviated by surgery. He was on Motrin for arthritis and swollen legs on a continual basis. Sundown syndrome was diagnosed on November 1, 1981, when he was seen and treated for delirium, abnormal behavior, disorientation, anemia, and senile dementia (organic brain syndrome). Unfortunately, he also suffered from congestive heart failure, chronic renal failure, and high blood pressure.
On December 5, 1981, he had a “weak spell” and fell to his knees. On December 9, 1983, he fell again and cut his forehead, which required sutures. On May 3, 1984, he fell and suffered a laceration over an eye which required sutures, broke a finger, and lost consciousness briefly.
We have not considered any symptoms after Coumadin was prescribed on March 18, 1986, but plaintiff’s medical records continued to reflect significant kidney problems, cardiac problems, arthritis, and other conditions associated with advanced age, up to the date of his death.
Any characterization of plaintiff as a “young 85” is sufficiently belied by the medical records to convince us that the trial court abused its great discretion in awarding plaintiff the excessive sum of $200,-000.00. Further, “the documents or objective evidence so contradict the witness’s story ... that a reasonable fact finder would not credit the witness’s story....” Rosell v. ESCO, 549 So.2d at 844-845. The highest award that can be justified under the facts of this case is $100,000.00 in general damages. Reck v. Stevens, 373 So.2d 498 (La.1979). The trial court’s judgment is amended accordingly. All costs are taxed to defendant.
AFFIRMED AS AMENDED.

. In 1987, the name of the hospital was changed to Lallie Kemp Regional Medical Center. The Department of Health and Human Resources was abolished in 1987, and jurisdiction over state hospitals was transferred that year to the newly created Department of Health and Hospitals.