586 So.2d 707 (1991)
GRADY ROPER DRILLING CONTRACTOR, Plaintiff-Appellee,
v.
TRANSCONTINENTAL GAS PIPELINE COMPANY, Defendant-Appellant.
No. 90-233.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Ernest C. Hunt, Jr., Lake Charles, for plaintiff-appellee.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Sharon E. McCauley, Lake Charles, for defendant-appellant.
*708 Before FORET and DOUCET, JJ. and CULPEPPER,[*] J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
This is an expropriation suit. Plaintiff, Grady Roper Drilling Contractor, Inc., entered into a servitude agreement with defendant, Transcontinental Gas Pipeline. Defendant paid plaintiff the sum of $100,000.00 and plaintiff reserved the right to sue for further compensation. Plaintiff sued defendant for $2,666,666.40.
After a trial on the merits, the trial judge awarded plaintiff an additional $86,390.00, plus $10,000.00 attorney's fees. Defendant appealed. Plaintiff answered the appeal seeking an increase in the award to $384,612.00 and modification of the judgment to remove changes made by the court in the servitude agreement.
The substantial issue on appeal is whether the trial court erred in basing his award on a finding that at least 161,538 cubic yards of unique high quality sand existed under the land, and then multiplying this by $1.20 per cubic yard to arrive at a value of $193,845.00, from which he deducted severance taxes and the sum of $100,000.00 already paid to reach his award of $86,390.00. Severance damages to the remainder are not at issue.
The servitude is 30 feet wide and 1753 feet long. The area affected is 1.2 acres. The parent tract consists of 94 acres, is not developed, is presently being used to grow timber, and has no easy access because the roads leading to it are unpaved dirt. The servitude is adjacent to two existing pipelines.
In April 1984, both defendant and plaintiff hired J. Stuart Limb of the James H. Glanville Company to drill three bore holes along the proposed right-of-way to determine whether valuable sand or gravel was present. Limb was educated in Great Britain and is a Fellow of the Royal Institution of Chartered Surveyors. He has over 20 years experience in both the United States and Britain and has clients in Louisiana and Texas. He was qualified as an expert mineral real estate consultant, which includes evaluating, appraising and advising on buying and selling sand and gravel operations.
The soil testing was carried out over a three day period. Three boreholes were drilled and samples were sent to Southern Testing Services, Inc., a lab chosen by Limb, and to Soil Testing Engineers, employer of Ronald Jones, a geotechnical engineer hired by plaintiff to test the soil.
Both Jones and Limb studied and interpreted the test results. Both men were recognized as experts in their respective fields and both testified at trial.
Jones testified as to the number of cubic yards of various types of sand and gravel under the affected area as shown by his analysis of the borehole tests. This was within his field of expertise as a geotechnical engineer. However, he gave no opinion as to the feasibility of using the property as a commercial sand or gravel mine. This was not within his expertise.
Plaintiff presented no expert opinion as to market value. It contends this land is so unique that there are no comparable sales.
Limb testified that he spoke with every sand and gravel producer in the area (indeed, the record reflects that Limb spoke with every producer mentioned at trial), people at the Louisiana State University Geology Department, the Highway Department, and the Department of Water Resource. Limb checked the Allen Parish courthouse records for sales, leases and any negotiations involving minerals. On the stand, Limb explained that, although a soil content may meet certain specifications, that factor alone does not make it a possibly commercially viable mining operation.
Limb testified that the distance the pit is from the market area as well as the ease of accessibility to the pit has a bearing on the commercial mining possibility of a piece of property. Several of plaintiff's witnesses testified that plaintiff's property is not easily accessible because the roads leading to it are country roads. Further, Limb noted *709 that Southern Silica, which is near plaintiff's property, does have a successful commercial sand mining operation but their product is unique and is not found in the content of plaintiff's soil. Limb analyzed the test results as follows:
"The combination of very low gravel content, fine nature of the gravel encountered and high overburden thickness would render the graveliferous material totally uneconomic to mine from a sand and gravel viewpoint.
The surface layer of tan and gray sand encountered in all three boreholes would be suitable for use as a bulk fill, and in fact excavation of this material was in progress during the site investigation program.
Such materials are a low value commodity in plentiful supply in this area with demand being sporadic and localized."
Limb concluded that, based on his knowledge and experience and his exhaustive research, plaintiff's soil does not possess any unique qualities that would make mining it commercially worthwhile.
Carr T. Dowell, III, a real estate appraiser and consultant with excellent credentials, was recognized as an expert at trial. His appraisal states:
"An analysis of bore samples taken from the site indicate that there is insufficient gravel in quality and quantity for commercial sand and gravel purposes. The surface layer of tan and gray sand would be suitable for bulk fill, but this is also true of large areas of land in the southern part of Allen Parish. Because of the location in conjunction to any market and because of the very poor access, the potential for use of this material for bulk fill is considered to be both remote and speculative."
In addition to plaintiff, fourteen other witnesses from the area, many in the sand and gravel business, testified as to the description of the property, the workings of a sand and gravel business and the prices of sand and gravel. None were qualified to testify as to the content of plaintiff's soil and its commercial mining possibilities, and none did.

LAW
Our law is well settled that, in expropriation cases, compensation is awarded for market value of the property taken, based on the price which a willing buyer would pay a willing seller under usual and normal circumstances. State v. Hayward, 150 So.2d 6 (La.1963). The highest and best use of the property as a whole, without separate valuation of its component parts, determines market value. Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App. 3 Cir.1972), writ ref'd, 266 So.2d 444 (La.1972). Any evidence bearing on market value is admissible. In cases involving sand deposits, evidence is permitted to show the quality and quantity, amount of overburden, cost to excavate, marketability and other factors which would affect market value. State v. D.H. Sanders Realty Company, 155 So.2d 24 (La.1963); State DOTD v. Fakouri, 541 So.2d 291 (La.App. 3 Cir.1989).
Plaintiff conceded in oral argument that no case squarely supports the analysis used by the trial court. However, it argues that Lafayette Airport Commission v. Roy, supra sets out principles which apply. In that case a large and profitable sand and gravel business had operated on part of the expropriated 97 acres for over ten years. The court found a fair rental value of $.35 per cubic yard for a sand and gravel lease. Using this income the court determined a fair market value. Plaintiff requests we extend Lafayette Airport Commission v. Roy, supra, to apply to the present case. We find that case clearly distinguished and decline to extend it. Here, there was no existing use as a sand and gravel mine.
In the present case, the trial judge did not find a market value of the land affected. He simply computed his award from the amount of sand he found existed using Jones' figures. This was error.
Nevertheless, we have considered the conflicting evidence as to sand deposits insofar as it is relevant to market value.
*710 Of the three experts who testified at trial regarding sand or gravel under the surface, Jones gave no opinion as to use of the property as a sand or gravel mine. Dowell answered that he thought the land was not suited for a sand or gravel mine and that its best use was as timber land. He valued it at $1,000.00 an acre. Limb answered that he did not think the land was suited for a large scale sand or gravel operation. He did say that it was suited for a small scale sporadic fill sand operation, but that he would not recommend that anyone buy plaintiff's property for that purpose. Thus, there was evidence of market value, but the trial judge ignored it and used an improper method of evaluation.
A trial judge has much discretion in the evaluation of and the weight given to the testimony of expert witnesses. However, the opinion of an expert witness is given effect if it is well grounded and reasoned. See, Lafayette Airport Commission v. Roy, supra; State DOTD v. Brookhollow of Alexandria, 578 So.2d 558 (La.App. 3 Cir.1991), writ den., 581 So.2d 709, 710 (La.1991).
We find the trial judge committed manifest error by relying solely on Jones' testimony and ignoring the testimony of the other experts. A totality of the evidence clearly shows that there is no market demand for plaintiff's property for mining sand or gravel. The materials in the soil are not unique. They are available throughout the entire area.
Plaintiff was paid $100,000.00 for the servitude and right-of-way. Plaintiff's property, as timber land, was appraised at $1,000.00 an acre. We find that plaintiff has been amply compensated for the servitude.
As to plaintiff's answer to the appeal, for the reasons stated above, there can be no increase in the award. Also, since we reverse and set aside the judgment appealed, any change made by the district court in the servitude agreement is removed.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of defendant dismissing plaintiff's suit at its cost.
REVERSED AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision as Judge Pro Tempore.