596 So.2d 353 (1992)
Willard MITCHELL, et ux., Plaintiffs-Appellees,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 90-1019.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Rehearing Denied April 8, 1992.
Writ Denied July 1, 1992.
*354 Fuhrer, Flournoy, Hunter & Morton, John Morton, Alexandria, John W. Pickett, Many, for plaintiffs-appellees.
Bobby L. Culpepper, Jonesboro, for defendant-appellant.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
YELVERTON, Judge.
This appeal arises from an automobile accident that happened on a two lane section of Highway 1 in Rapides Parish at mid-morning on May 21, 1988. Willard Mitchell, his wife Earnestine, and a child, Tonia Richardson, were traveling south in their car. It was raining. Joseph Rachal's automobile, Rachal driving northbound, crossed the centerline, and there was a collision.
Willard and Earnestine Mitchell suffered serious and permanent injuries. Earnestine is permanently paralyzed from the chest down and is confined to a wheelchair. Willard suffered a broken left hip, and he was blinded in his right eye.
The Mitchells sued Rachal and his insurer, Allstate Insurance Company, and the State of Louisiana through the DOTD. They alleged that a cause of the accident was the unreasonably dangerous condition of the highway, and that the DOTD had actual notice of the poor condition of the road and had ample opportunity to correct it.
After an extensive trial, the judge found the DOTD liable and awarded damages as follows:

Mrs. Mitchell:
 General Damages............................$ 500,000.00
Future Medical, equipment,
therapy, medication & related
needs.........................................$3,176,000.00
Past Medical .................................$ 76,901.12
Impairment of earning capacity............... $ 238,929.00
Barrier free living expenses..................$ 94,000.00
 _____________
TOTAL........................................ $4,085,830.12
Mr. Mitchell:
General Damages................................$ 500,000.00
Past and Future Lost Wages.....................$ 274,271.00
Future Medical.................................$ 75,000.00
Past Medical ..................................$ 39,557.48
 ____________
TOTAL..........................................$ 888,828.48

The state's appeal attacks both the finding of liability and the award of damages.
The Mitchells answered the appeal contending that the trial court erred in finding that the claims of Earnestine's minor children for loss of consortium were prescribed. They also complain by answer to the appeal that it was error not to rule that the state waived the cap of La.R.S. 13:5106 ($500,000 in general damages) by its failure to plead the cap as an affirmative defense.
We affirm the judgment in all respects except the ruling on the plea of prescription. As to this ruling we reverse in part, and award damages.

LIABILITY
The trial court stated in its reasons for judgment:
After hearing all of the evidence in this case regarding the accident and the cause or reason for the Rachal vehicle losing control and striking the Mitchell vehicle, the court is left with little doubt that the condition of the road and not driver error caused this accident.
The physical characteristics of this stretch of road were unique, not simply in the sense that the road was not constructed in accordance with modern standards, but *355 in the sense that it was not maintained in accordance with any standards. Whether the roadway at the scene of the accident presented an unreasonably dangerous condition depends upon the particular facts and circumstances of each case. Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La.1986). The trial judge in the present case found that the state of disrepair of the roadway at the scene of the accident presented an unreasonably dangerous condition, that the physical characteristics of the road caused the accident, and that the driver Rachal's conduct was not a cause of the accident. These findings of fact were based on the testimony of witnesses, both lay and expert. The principles that govern an appellate court's review of a trial court's factual findings are found in Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989):
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. (Citations omitted.)
After considering the record viewed in its entirety in the present case, we find no clear error in the trial court's findings of fact.
The level straight stretch of road was worn, rutted, polished, and slick. It had severe flattening of its crown and had lost its friction properties. One expert described it as being the worst rutted of any state highway he had ever seen. The trial judge said it was "grossly deteriorated". There were no warning signs in the area.
DOTD's own records revealed that it had knowledge of the condition at least three years prior to the accident. In 1985, District Engineer Willie Pugh requested that the section be machine leveled and overlaid. Annual inspections in October of 1986 and 1987 also indicated the need for corrective measures for these conditions. Doyle Vines, a DOTD engineer for 17 years, stated that the state should have known about the condition five to six years earlier.
Robert Breedlove, a surveyor, and Gene Moody, a civil engineer, inspected the site in September of 1988. Moody testified that the road was worn, polished, rutted, and had lost its texture.
There was considerable opinion expressed that hydroplaning caused the accident. The ruts allowed "ponding" of up to.6 inches and Moody believed that the road was "very hazardous to the average motorist" due to the lack of proper maintenance.
John Glennon, a consulting engineer, testified that the severe rutting allowed water accumulations enough to cause loss of control. He concluded that the accumulation of water in the wheel tracks led to the control loss in this case. He also felt that the condition should have been a top priority and that the state had sufficient time to correct the situation. Wet weather accident rates along this stretch of road were double the average.
For the state, Jeffery Milburn, a civil engineer, testified that the highway was safe for the prudent driver. He disputed the findings of the other experts as to how fast Rachal was traveling, testifying that Rachal was speeding. He also concluded that there was not a disproportionate number of wet weather wrecks. However, this witness never actually saw the scene prior to the resurfacing after the accident, and he based his testimony on his observation of another stretch of highway. The trial judge commented in his reasons for judgment that the testimony of the state's expert *356 in his opinion was completely rebutted by the opinion of the expert for the plaintiffs.
The state argues that the trial court should have at least found some measure of fault on the part of the driver Rachal. The trial judge said that there was no evidence other than speculation to support a contention of driver error on the part of Rachal. The trial judge was convinced from the testimony that Rachal's car simply hydroplaned without any fault on his part.
In Howell v. State, Dept. of Trans., 467 So.2d 629 (La.App. 3rd Cir.1985), we affirmed a trial court finding placing the entire fault on the state where the driver lost control on a rain slick highway the defect of which was the absence of aggregate in the asphalt. The evidence reveals that the same condition existed in the roadway in the present case. The state had the burden of proving that Rachal's negligence was a legal cause of the accident. There was testimony that Rachal's speed was 50 m.p.h., which was under the speed limit. There was no testimony that his speed of 50 m.p.h. was unreasonable. There was no evidence of any other improper driving. The state simply did not bear its burden of proof. We are not convinced on this appeal that the trial judge committed manifest error in attributing no fault to the driver Rachal.

DAMAGES
Earnestine was 32 at the time of the accident. Her physician, Dr. Warren Founds, testified that her paraplegia is hopeless. Besides her paraplegia, Earnestine fractured her hip, her jaw and several ribs, and broke her ankle. She was hospitalized for weeks after the accident and underwent numerous surgeries. She lived with her brother for two months after her release from the hospital. She then spent some time at the Northwestern Rehabilitation Center where she was instructed in self catheterization and control of her bowel movement. She still has no idea when she needs to use the bathroom. She needs help getting in and out of bed, and she has to have assistance to dress.
Dr. Founds further testified that Earnestine would never again be able to walk. Her condition and symptoms would experience a slow and gradual deterioration. She would suffer permanent and recurrent complications such as ulcers, urinary infections, and kidney damage. Dr. Founds estimated that Earnestine would require future medical care which would include rehabilitation, hospital care, therapeutic care, medication, equipment, attendant nursing care, and a barrier free environment.
He conservatively estimated that Earnestine would have annual hospital stays of seven to ten days, barring complications. He further stated that she would require an initial assessment and ongoing physical, occupational, vocational, and psychological therapy as well as annual physical and neurological examinations. She would need to see a gastroenterologist every other year and would require physical therapy three times a week. She would need various equipment and medication in the future.
Jack East, a rehabilitation counselor, prepared a life care plan for Earnestine, which Dr. Founds testified was necessary, that provided for future medical care, hospital care, therapy evaluation and administration, medical evaluation, transportation and housing needs, equipment, medicine, mental health, and attendant care. Dr. Jan Duggar, an economist, adjusted these figures and arrived at a present-day value, having a high estimate of $3,176,009 and a median estimate of $2,537,326, for future medical expenses. The high estimate was awarded by the court.
This future medical expense itemization was fully supported by the evidence, reasonable, and virtually undisputed. Other special damages sustained by Earnestine and sufficiently proved included $76,901.12 for past medical expenses, and $238,929 for her past and future impairment of earning capacity.
Except for broad general attacks on the special awards as being excessive, the only award targeted for specific criticism in the *357 appellate briefs was the $94,919 award for barrier free living accommodations. The estimate for this item ranged from $40,000 to the amount awarded, $94,919. We have examined the testimony supporting this award, and find that it, along with the other special damages awarded, are justified by the record and are not an abuse of discretion.
Dr. Baer Rambach testified that Willard had pelvic surgery. He was on crutches. His hip was not functioning. He will probably need a hip replacement. Additionally, he had bad injuries to his right knee. His bad knee and disfunctioning hip in combination with the loss of eyesight in one eye, support the judgment for future medical expense and future wage loss awarded. We find that the trial court did not abuse its much discretion in making these awards.
Finally, the state contends that the award of general damages in the amount of $500,000 each to the Mitchells, was an abuse of discretion. We disagree. It is apparent, considering the nature of the injuries of these two plaintiffs, that the trial court's limitation of the awards to only $500,000 resulted from the requirements of La.R.S. 13:5106, the statutory cap on general damages from the state or a political subdivision, rather than from an analysis of the actual amount of these damages. Absent an initial determination that the trial court's very great discretion has been abused under the facts of this case, we cannot disturb the trier's award. Reck v. Stevens, 373 So.2d 498 (La.1979). In Earnestine's case, a far higher award would have been justified. The court did not abuse its much discretion in granting the general damage awards in either case.

PROCEDURAL ISSUE
While we are on the subject of the statutory cap, La.R.S. 13:5106, we will respond to the contention made by the plaintiffs in their answer to the appeal, that the state should not have been permitted to avail itself of the benefit of this cap because of its failure to plead it as an affirmative defense. We find no merit to this argument. The statute does not create an affirmative defense; rather, it imposes a limitation on liability. The plaintiff's petition pleaded general damages. The state in its answer denied the allegations. The subject of the amount of general damages was thus put at issue in the case. The state did not waive its right to invoke the cap by its failure to specifically plead reliance on it as a limitation on its liability. See Williams v. Fisher, 79 So.2d 127 (La. App. 1st Cir.1955).

PRESCRIPTION
We finally consider whether the loss of consortium claims of Earnestine's children had prescribed. The accident occurred on May 21, 1988. The original petition was filed on September 20, 1988. The amending petition asserting the loss of consortium claims of the children was filed on November 29, 1989.
Earnestine had four children by a prior marriage. The youngest, Tonia Richardson, was in the car with the Mitchells when the accident happened. She sustained minor injuries and was named as a plaintiff in the original petition, seeking damages for her injuries. The other three, older children, were not involved in the accident and their claims for loss of consortium were asserted by amending petition only after prescription had run. Tonia's claim for damages was amended after prescription had run to assert a claim for loss of consortium. The trial court, finding that there was no evidence that the state was aware of the children before the filing of the amending petition, and that it was filed on the virtual eve of the trial thus causing prejudice, ruled that the amendment adding these plaintiffs did not relate back, and that prescription had accordingly run.
The decision of Giroir v. South La. Medical Ctr., Etc., 475 So.2d 1040 (La. 1985), explains the criteria for determining when an amendment adding a plaintiff relates back to the time of the filing of the original petition, such that the running of prescription is avoided. At page 1041, the court explained:

*358 An amendment adding a plaintiff relates back when the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original petition, the defendant either knew or should have known of the existence and involvement of the new plaintiff, the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated, and the defendant will not be prejudiced in preparing and conducting his defense.
With respect to the three children other than Tonia, we find no clear error in the court's findings as to these prescription facts, and affirm those rulings. However, we find clear error in the ruling as it applied to Tonia's case. The trial court evidently overlooked the fact that Tonia Richardson was in the case as a plaintiff seeking damages well before prescription ran. The state knew of her existence, and it should not, therefore, have been prejudiced in preparing for and conducting its defense to her claim for loss of consortium.
The trial judge made no award for Tonia for either her personal injuries or loss of consortium. The record is before us and we are empowered to determine her damages de novo. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
Tonia was six years old at the time of the accident. She suffered a broken collarbone. Her medical expenses were $496.50. We award $2,996.50 for the use and benefit of Tonia Richardson for her personal injuries.
Tonia was Earnestine's youngest child. There was testimony that she and her mother did things together before her mother's injury. There was some medical testimony that Tonia was suffering an adjustment disorder relating to her mother's injury. Certainly she will never have the benefit of her mother's nurturing and guidance. We grant an additional award for the use and benefit of Tonia in the amount of $10,000 representing loss of consortium.
For the foregoing reasons, the judgment of the trial court is affirmed, except that we reverse the judgment insofar as it granted the exception of prescription as to Tonia Richardson's claim. The claim of Tonia Richardson is recognized, and her damages are fixed at $12,996.50. The judgment is amended and increased accordingly. Costs of this appeal are to be paid by appellant.
AFFIRMED IN PART; REVERSED IN PART, AND AMENDED.