612 So.2d 163 (1992)
John SALTER
v.
STATE of Louisiana Through the DEPARTMENT OF HEALTH AND HUMAN RESOURCES.
No. CA 91 2081.
Court of Appeal of Louisiana, First Circuit.
December 23, 1992.
*164 Paul Dué, Baton Rouge, Johnny McGary, Ponchatoula, for plaintiff-appellee.
Michael A. Patterson, Baton Rouge, for defendant-appellant State (DHHR).
Before WATKINS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
By this appeal we are called upon to determine whether the trial court erred in its judgment in rule wherein it determined that the plaintiff was entitled to pre-judgment interest in excess of 6% as against the defendant State. La.R.S. 13:5112. Finding error in this ruling we reverse the judgment of the trial court.
The facts out of which this contest arose are as follows:
On April 16, 1987 plaintiff, John Salter, filed suit to recover damages for injuries allegedly received while he was being treated by certain physicians at Lallie Kemp Hospital.
The State of Louisiana through the Department of Health and Human Resources (hereafter called "the State") answered the petition on June 23, 1987 and denied liability and, alternatively, pleaded the plaintiff's negligence and/or assumption of risk.
On February 12, 1990, following a bench trial, judgment was rendered in favor of plaintiffs[1] and against the State in the sum of two hundred thousand two hundred ninety dollars ($200,290.00). The judgment provided that "defendant pay legal interest... from the date of judicial demand until paid." The defendant filed a timely suspensive appeal with this Court. On June 27, 1991, this Court rendered judgment amending and affirming the judgment of the trial court. Salter v. State of Louisiana through the Department of Health and Human Resources, 582 So.2d 994 (La. App. 1st Cir.1991) This Court reduced the general damage award to $100,000.
The judgment became final on July 27, 1991.
On July 31, 1991, a check in the amount of $129,697.41 was tendered to the plaintiffs as full and final settlement. The check was accompanied by a satisfaction of judgment. A letter dated August 5, 1991, from plaintiff's representative, advised the defendant that its tender was being refused.
On August 19, 1991, defendant deposited a check for $130,285.84 with the court. The defendant also filed a rule to show cause why the tender should not be accepted and judgment satisfied and erased.
On September 26, 1991, plaintiffs filed a motion to withdraw the funds and to determine pre-judgment interest. In paragraph 6 of the motion the plaintiff made the following allegations:
6.
Prejudgment interest should be calculated at the full legal rate, because defendant failed to plead this statute as an affirmative defense, the judgment calling for legal interest has become final, and said statute violates La. Const. art. XII, Sec. 10(A).
On September 30, 1991, the trial court rendered two judgments. In one judgment, the court ordered the funds, which were being held in the court's registry, to be withdrawn by plaintiffs, without prejudice to their position seeking additional pre-judgment interest. In the second judgment, the court awarded plaintiffs "additional prejudgment interest at the prevailing legal rate ... and [said interest was]... not limited merely to six per cent per annum."
In response to these judgments in rule, defendant filed an application for supervisory writs with this Court on October 15, *165 1991. Salter v. State of Louisiana, et. seq., CW 91-1837 (1991). On December 27, 1991, this Court denied the application and remanded the matter to the district court in order for an appeal to be perfected. This appeal followed.
We are presented with two alternative issues. First, we must decide whether the State may be cast for legal interest in excess of 6% when it does not affirmatively plead that amount of interest in its defense. La.R.S. 13:5112(C). Next we are called upon to decide whether the statute, which provided for this amount of prejudgment interest as against the State, is a violation of Louisiana Constitution Article XII Section 10.
AFFIRMATIVE DEFENSE
The trial court ordered the defendant to pay prejudgment interest at the "prevailing legal rates" and said interest would "not be limited merely to six percent per annum."
On appeal, the State contends that the trial court erred in concluding that it was obliged to plead, as an affirmative defense, the statute which provides that the judgments against the State, in claims for personal injuries or wrongful death, are subject to an interest rate of 6% per annum, from the date of judicial demand until the judgment is signed. R.S. 13:5112(C). We agree.
Louisiana Revised Statute, Title 13 Section 4203 provides for the payment of interest in judgments rendered in delictual cases:
R.S. 13 Sec. 4203. Interest on judgments from judicial demand in ex delicto cases
Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
Generally, the law controlling legal interest is set forth in Louisiana Civil Code Article 2924, as follows:
C.C. Art. 2924. Rates of legal and conventional interest; usury
A. Interest is either legal or conventional.
B. (1) Legal interest is fixed at the following rates, to wit:

. . . . .
(2) The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:

. . . . .
C. On and after September 11, 1981, until January 1, 1988, the rate shall be twelve per cent per annum.

. . . . .
A specific provision for legal interest against the State or one of its departments, boards, commissions or political subdivisions, is set forth in Louisiana Revised Statute Title 13 Section 5112(C) which reads:
R.S. 13 Sec. 5112. Suits against the state or political subdivisions; court costs; interest
C. Legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date of judicial demand until the judgment thereon is signed by the trial judge in accordance with Code of Civil Procedure Article 1911. Legal interest accruing subsequent to the signing of the judgment shall be at the rate fixed by Civil Code Article 2924.
It is a generally recognized rule of statutory construction that when two statutes applicable to the same subject appear to be in conflict, the statute that is more specifically directed to the matter at issue must prevail, as an exception to the statute that is more general. Boudreaux v. Terrebonne Parish Police Jury, 422 So.2d 1209 (La.App., 1st Cir., 1982) citing Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La. 1980).
In the present case the statute specifically directed to the amount of interest to be paid by the State (i.e., 6% per annum from the date of judicial demand until the judgment) would be controlling.
Thus, although we find that this limited interest statute is applicable, we must also decide whether the State was *166 obligated to specifically plead the statute, as an affirmative defense or in lieu thereof, lose the statute's protection.
Louisiana Code of Civil Procedure Article 1005 provides for affirmative defenses to be pleaded in the defendant's answer:
C.C.P. Art. 1005. Affirmative defenses
The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense....
The affirmative defenses listed in this codal article are merely illustrative and not exclusive. Webster v. Rushing, 316 So.2d 111 (La., 1975); Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir., 1979).
An "affirmative defense" is one which will have the effect of defeating the suit on the merits. Webster v. Rushing, supra, Trahan v. Ritterman, supra. Such a defense must be specially pleaded in the answer. Trahan v. Ritterman, id. The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that the plaintiff is not surprised. Webster v. Rushing, supra.
Legal interest is not an affirmative defense which must be specifically pleaded, as it will not have "the effect of defeating the suit on the merits". Moreover, legal interest is owed by operation of law and, as such, surprise does not result from one's failure to specifically plead this item of compensation. See: Lewis v. Macke Bldg. Services, Inc., 524 So.2d 16 (La.App., 5th Cir., 1988); writ denied, 532 So.2d 131 (La., 1988). Cooley v. Allstate Insurance Co., 443 So.2d 739 (La.App., 4th Cir., 1984), writ denied, 446 So.2d 1229 (La., 1984).
Accordingly we find that the failure of the defendant to plead the subject statute did not operate as a waiver of its protections. The applicability of the statute occurred by operation of law. The trial judge erred in awarding plaintiff prejudgment interest in an amount in excess of the statutorily prescribed 6% per annum.
Moreover, we are not persuaded by the plaintiffs' argument that the subject statute (i.e., La.R.S. 13:5112) is analogous to the "cap" on damages set forth in the Louisiana Medical Malpractice Act (i.e., La. R.S. 13:5106) and for this reason, must be specifically pleaded. In a recent decision, the Louisiana Third Circuit Court of Appeal held that "the statutory cap of La.R.S. 13:5106 ... does not create an affirmative defense: and hence, "[T]he state did not waive its right to invoke the cap by its failure to specifically plead reliance on it as a limitation on its liability." Mitchell v. State of Louisiana Through the Department of Transportation and Development, 596 So.2d 353 (La.App. 3rd Cir., 1992) writ denied, 600 So.2d 680 (La., 1992). As such, this argument lacks merit.
CONSTITUTIONALITY
In the alternative, plaintiffs allege that this statute is unconstitutional. La. R.S. 13:5112. First, plaintiffs aver that this statute violates the Equal Protection Clause of the Louisiana Constitution. La. Const. Article I Sec. 3 (1974).
Where the constitutionality of a statute is assailed upon specific grounds in a trial court, other grounds of alleged invalidity may not be presented for the first time and considered in an appellate court. Giamalva v. Cooper, 217 La. 979, 47 So.2d 790 (1950); Osborn Funeral Home v. Louisiana State Board of Embalmers, 194 So.2d 185 (La.App., 2d Cir., 1967) and 216 So.2d 145 (La.App., 2d Cir., 1968) writ ref. 253 La. 311, 217 So.2d 409, and 253 La. 315, 217 So.2d 411 (La., 1969).
Since the only grounds for assailing the statute in the trial court was that it violated Louisiana Constitution, Article 12 Section 10 (1974), we refuse to consider the allegation, presented for the first time on appeal, that the statute violates Louisiana Constitution, Article I Section 3 (1974).
As to the statute's violation of Louisiana Constitution Article 12 Section 10 (1974) appellees analogize the State's limitation *167 of pre-judgment interest to the exemption of the State for court costs. La. R.S. 13:4521 and 5112(C). They reason, as did the court in Segura v. Louisiana Architects Selection Board, 362 So.2d 498 at 499 (La., 1978), that the consequence of exempting the State of this obligation would be to relieve the State of its liability; and this is prohibited by the Louisiana Constitution. La. Const. Art. 12 Sec. 10. We disagree.
That constitutional article provides, in pertinent part, as follows:
La. Const. Art. 12, Sec. 10. Suits Against the State
Section 10. (A) No immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.

* * * * * *
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered. (Emphasis Added).
The legislative power to create includes the power to destroy and as such, the power to limit. Sibley v. Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, 446 So.2d 760, 768 (La.App., 1st Cir., 1983), appeal 462 So.2d 149 (La., 1985); on reh., aff. in part, reversed in part (other grounds) and remanded 477 So.2d 1094 (La. 1985).
A clear reading of this constitutional provision indicates that the broad language of Section "A" of this Article waiving the State's immunity in personal injury cases is limited by Section "C" of this Article which provides restrictions on the general grant of immunity. In particular, although the State may be sued and judgments secured against it in matters of contract and/or injury to person or property, the State nonetheless retains the power to "provide for the effect of a judgment."
"Interest" is a mere incident to the principal debt (i.e., the judgment). Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841 (1947). As such, it is distinguishable from "costs" which are "part of the `liability' to which a party cast in litigation is subject." Segura v. Louisiana Architects Selection Board, supra, 362 So.2d at 499. Stated another way, "cost" is an expense incurred in securing the judgment, whereas "interest" is a natural effect of the judgment.
The redactors intended that the legislature should retain the power to provide for the effect of such judgments and, so stated, in Section C of this constitutional article. The legislature responded with the enactment of Revised Statute Title 13 Section 5112(C) wherein it restricted the State's obligation for prejudgment interest to 6% per annum. This enactment is constitutionally sound and is in accord with the mandate of Article 12, Section 10 of the Louisiana Constitution.
The Segura case is distinguishable from the present in that no constitutional provision was made for expenses incident to securing judgments against the State (i.e., court costs). As such, the Supreme Court correctly found that since the State was not immune from suit and liability in the case before it that there was no reason why the State should not pay the court costs incurred by the plaintiff and advanced by him through all phases of the litigation.
For the reasons assigned, the judgment of the trial court is reversed at plaintiffs' costs.
REVERSED AND RENDERED.
NOTES
[1] The heirs to John Salter were substituted as party plaintiffs following the death of John Salter.