617 So.2d 583 (1993)
J.B. RYLAND, Sr., Indiv. etc., Plaintiff-Appellee,
v.
LIBERTY LLOYDS INSURANCE COMPANY, et al., Defendants-Appellants.
No. 92-531.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Rehearing Denied May 25, 1993.
*585 Darrel Dee Ryland, Marksville, for plaintiff-appellee.
David Payne Spence, Alexandria, for defendants-appellants.
Before STOKER, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
The State of Louisiana, through the Department of Transportation and Development (DOTD), appeals a judgment of $1,175,000.00 entered against it in this wrongful death tort action. DOTD disagrees with the trial court's findings of negligence, cause-in-fact, apportionment of fault, and quantum. After a careful and thorough review of the record and the jurisprudence, we affirm the judgment of the lower court.

FACTS
The suit arises out of a near head-on collision which occurred on Louisiana Highway 107 in Avoyelles Parish, Louisiana, on August 22, 1988, at approximately 11:30 p.m. which caused the death of both Karen Ryland and Debbie Flint. Ms. Ryland was 36 years old and employed by Humana Hospital in Marksville, Louisiana as a licensed practical nurse. She was married to J.B. Ryland, Sr. and was the mother of twin girls, Joy Belinda and Katie Sue, who were four (4) years old at the time of her death.
After working the 3:00 p.m.11:00 p.m. shift at Humana, Ms. Ryland proceeded north on Highway 107 driving to her home. A 1984 Chevrolet Chevette, driven by Ms. Flint, proceeding in a southerly direction, crossed the center line and struck Ms. Ryland's vehicle in a near head-on collision, the force of which threw both vehicles on to the shoulder of their respective lanes. Ms. Ryland's vehicle immediately caught fire and burned. The front left portion of Ms. Flint's vehicle was severely damaged and she was pronounced dead at the scene. There were no eyewitnesses to the accident.
The scene of the accident was a dark, narrow, curvy stretch of highway that contained cracks and holes of various sizes in many places at the time of the accident. Ms. Ryland lived in the area for some period of time, had driven on the portion of Highway 107 where the accident occurred on many occasions, and was familiar with the area. Ms. Flint, on the other hand, a native of Kentucky, had only driven that portion of Highway 107 approximately fifteen (15) times and never drove Highway 107 at night prior to August 22, 1988. Additionally, Ms. Flint was driving a borrowed car belonging to her fiance which she had only driven approximately two times. The accident occurred in Ms. Ryland's lane of travel when the Flint vehicle crossed the center line.
Following trial, the matter was taken under advisement and written reasons for judgment were rendered on December 11, 1991. The judgment was signed in favor of the Rylands and against DOTD in accordance with the court's written reasons. The trial judge found DOTD to be 75% at fault in causing the accident and Flint to be 25% at fault. The court set damages at $325,000.00 for J.B. Ryland's loss of love and affection and at $300,000.00 for the loss of past and future income. Joy and Katie were awarded $275,000.00 each for their loss of love and affection. After considering the allocation of fault, Ryland was awarded a total of $468,750.00 from the DOTD and, as natural tutor of his minor daughters, Ryland was awarded $206,250.00 for each child.

ISSUES
DOTD has alleged eight assignments of errors which present the following issues:
1. Whether DOTD was negligent in the maintenance and inspection of the roadway.
2. Whether DOTD's negligence was a cause-in-fact of the accident.
3. Whether the trial court erroneously disregarded expert opinion in favor of *586 lay opinion regarding the condition of the highway.
4. Whether the trial court properly apportioned fault.
5. Whether the trial court erroneously failed to apply the limitation on general damages under LSA-R.S. 13:5106.
6. Whether the award of damages was excessive.

LAW AND DISCUSSION

A. Negligence and Causation
The trial judge sat as the trier of fact in this case. Thus, determinations of possible breaches of the appropriate standard of care were left to the trial judge whose findings related to negligence were based on the inferences drawn from the testimony and the evidence. In order for this court to upset the factual findings of the trial court, manifest error must exist. After a careful review of all the facts, if the trial court's findings of fact are not clearly wrong, we must allow them to stand even if the facts are open to more than one interpretation. Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court's conclusion as to whether Ryland discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong. Bruno v. Harbert International, Inc., 593 So.2d 357 (La. 1992). The Supreme Court in Bruno, supra at 361, defined the meaning of "clearly wrong" and "manifest error" in enunciating the general principles that govern an appellate court's power to reverse a trial court's factual findings:
"When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Bruno v. Harbert International, Inc., 593 So.2d 357 supra at 361.
Since the enactment of LSA-R.S. 9:2800, the elements which must be proved in order for Ryland to recover damages from a public entity defendant based on the defective condition of a roadway are: (1) the DOTD owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the DOTD had actual or constructive knowledge of the defect or risk of harm thereby and failed to take corrective action within a reasonable time; and, (4) causation. Valet v. City of Hammond, 577 So.2d 155 (La.App. 1st Cir.1991).
The trial court found all four of the above elements were proven by Ryland. The DOTD contends the trial court erred in all but the first of these findings. These findings by the trial court, that the roadway at the accident site was substandard and posed a danger to motorists and was defective, that the condition of the road was a cause-in-fact of the accident, and that the DOTD had a deficient inspection and maintenance system, are findings of fact which will not be disturbed absent manifest error.
We cannot say that the findings by the trial court were manifestly erroneous. The roadway in question was notorious for potholes and cracks that ran both horizontally and vertically with varying lengths, widths and depths. Some portions of the roadway at the accident site had been patched using fifteen (15) tons of material.
The DOTD argues that the trial court erred in disregarding the opinion of the experts and instead relying on the lay *587 opinion of the local residents as to the condition of the road. The trial judge stated in his written reasons for judgment:
Both sides put on evidence from expert witnesses. Quite frankly, the Court was not impressed with either expert. The plaintiff's expert readily surmised that only the condition of the road could have caused this accident, while defendant's expert was willing to state that there was no way the road could have caused this accident. The defendant's expert was willing to offer this opinion despite the fact that the road had been overlayed with a `patch' and he could not even know what was under that patch. The Court is afforded little assistance from these `experts'.
The Court is impressed, however, by the lay witnesses who testified as well as the photographs of the accident site.
The lay testimony came from persons who live in the area of the accident site and who travel that portion of Highway 107 on a daily basis. Glenn Ducote, who owns a salvage yard off of the highway, grew up in the area and travels Highway 107 everyday, sometimes 3 to 4 times a day. Mr. Ducote testified that the roadway has potholes and cracks which makes it necessary for him to be careful when traveling the portion of Highway 107 where the accident occurred. Similarly, Diane Ryland and Diane Ryland Bordelon regularly travel the highway and have lived in the area for most of their lives. Their testimony reveal that they always slow down due to the cracks along the side of the road. To avoid the cracks, they veer to the left which puts them close to the centerline.
State Trooper Wayne Riche testified that he traveled Highway 107 many times and saw cracks in the road that went in both directions causing unevenness in the road, as well as a small pothole. After the accident, he noticed some overlaying work had been done; however, some unevenness still exists in more than one area. Trooper Riche's opinion was that someone with a small vehicle would experience a greater problem upon encountering the unevenness than a person with a larger vehicle.
Avoyelles Parish Deputy Sheriff Kenneth Smith described parallel and perpendicular cracks in the roadway, with some parts being higher than others. In specifically describing the potholes, Deputy Smith stated that Highway 107 near the site of the accident had more potholes on the southbound lane. As one approached the curve, there was a difference in elevation because of the cracks. The patches near the accident site were extremely heavy and worse than other parts of Highway 107. Deputy Smith testified that he would either enter into the middle part of the road to miss the potholes or he would slow down if there was oncoming traffic. When questioned by the judge, Deputy Smith testified that if his tire got caught in the gully, the car would veer to the right causing him to suddenly cut it back to the left toward the center line.
All witnesses who drove over the portion of Highway 107 at the accident site testified that their cars were from mid-size to large with the exception of Deputy Smith who drove a Chevrolet Camaro Z-28. However, the Z-28 was a police unit, high performance model with heavy duty suspension.
The trial judge considered the testimony of various people who had driven across the portion of Highway 107 where the accident occurred. As did the trial court, we have concluded that the lay witnesses' testimony of the condition of Highway 107 at the accident site outweighs the expert witnesses' testimony as to the factors that caused the accident. A trial judge has much discretion in the evaluation of and the weight to be given to the testimony of expert witnesses. Grady Roper Drilling v. Transcontinental, 586 So.2d 707 (La.App. 3d Cir.1991), writ denied, 590 So.2d 592 (La.1992). Neither expert had experience driving on Highway 107 on a regular basis and, more specifically, over the portion of the accident site as opposed to the lay witnesses who were consistent in their testimony as to the precautions they took in driving in that area.
The DOTD contends that the lay testimony is inconsistent because some of the witnesses *588 called the holes "potholes" while others called them "cracks" or "voids". One expert refused to call the holes "potholes" merely because they were not round. What is consistent from the testimony is that some type of opening in the roadway at the accident site was present whether it be a pothole, crevasse, crevice, crack, or void which caused the witnesses to use caution when using that portion of Highway 107. Our careful review of this record convinces us that the judge was not clearly wrong when he accepted the testimony of the lay witnesses over that of the two experts.
The trial court's finding that the DOTD had a deficient inspection and maintenance system is not clearly wrong. Such a finding proves actual or constructive knowledge of the defect in Highway 107 and a failure to remedy it within a reasonable time.
It is obvious from the photographs taken of the accident area that many holes, cracks, and/or crevices existed at the time of the accident. After the accident, attempts were made to remedy the rough road surface which worsened the situation because the overlay caused unevenness in the road. Further, it was the responsibility of Lawrence Adams, the Parish Maintenance Superintendent and an employee of DOTD who rode Highway 107 at least once every two weeks, to check for any defects in the road. Mr. Adams testified that the roadway was in very good condition the morning after the accident and he failed to see any potholes or cracks in the road. Roderick Vidrine, the foreman of the asphalt crew, also an employee of the DOTD, who only drives on Highway 107 if there is work to be done on the road, could not recognize the accident site from the photographs nor could he remember ever pouring approximately 15 tons of asphalt into a pothole sometime after the accident since this information did not appear on the daily work report. Mr. Vidrine further testified that sometimes when his crew repairs a road, a hole or crack other than the hole or crack his crew was supposed to repair may get filled because they "don't pass a hole to fill another." In that manner, it is possible for him to make repairs that do not show up on any records.
The state does not have the obligation to maintain perfect roadways. The DOTD is not a guarantor of the safety of travelers. Sinitiere v. Lavergne, 391 So.2d 821, 824 (La.1980). The trial judge concluded that the DOTD has an obligation to have in place a system of detection and repair of its roadways that will adequately assure the safety of motorists and that such a system did not exist in Avoyelles Parish. We agree. Mr. Adams testified that he rode the highway periodically with no explanation of alternative plans should he fail to ride the roadways. Since the portion of Highway 107 at the accident site was so badly blemished, had Mr. Adams driven Highway 107 as he testified, DOTD should have had knowledge of the disrepair.
The trial court further found that the system of repair was "ludicrous." It was obvious from the before and after photographs of the accident scene that the holes in Highway 107 at the accident site had been patched; yet, there was no record to show that repairs had ever been ordered or effectuated for that site. The fact that repair work which may have been ordered for a defect in one location may be forsaken in favor of a worse defect at another location left this remedial work systemless and to the discretion of laborers. The lower court held this practice to border on gross negligence. We agree.
The last element of Ryland's case is the question of causation. The DOTD asserts that the trial court was wrong in finding that the roadway was a cause-in-fact of the accident. Causation is an issue of fact; thus, this court is bound to follow the mandate stated in Rosell, supra. An act or omission is a cause-in-fact of harm to another if it was a substantial factor in bringing about the harm. Socorro v. City of New Orleans, 579 So.2d 931, 939 (La.1991). Factors which may be considered in determining whether the actor's negligent conduct is a substantial factor include, whether the actor's conduct has created a force or series of forces *589 which are in continuous and active operation up to the time of harm. Trahan v. State, through DOTD, 536 So.2d 1269 (La. App. 3d Cir.1988). Our review of the record and evidence discloses that the trial judge committed no manifest error nor was he clearly wrong in his finding that the defective roadway was a cause-in-fact of the accident that killed Karen Ryland. The accident would not have occurred if there had not been defects in Highway 107 at the accident site which existed for a long period of time. Further, there is a substantial relationship between the failure to correct the road defects and the vehicle accident, the risk encountered by Flint and Karen Ryland.

B. Apportionment of Fault
The DOTD asserts as error the trial court's allocation of 75% of the fault to it and 25% of fault to Flint. Since the Louisiana legislature's adoption of a comparative fault system, it has been the task of the factfinder to allocate shares of negligence. Socorro, supra; LSA-C.C. art. 2323. In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), the Supreme Court adopted Section 2(b) of the Uniform Comparative Fault Act which states:
"[i]n determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed."
In Socorro, the Supreme Court, continuing to quote Watson, supra, set forth several factors which may influence the respective degrees of fault:
"In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including 1) whether the conduct resulted from inadvertence or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actor, whether superior or inferior, and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to plaintiff are considerations in determining the relative fault of the parties." Id. 579 So.2d at 942.
Because each of these factors which may influence the respective degrees of fault are factual considerations, manifest error/clearly wrong standard applies. The percentage of allocation of fault in a comparative negligence case is a question of fact and, as in any other question of fact, it should not be disturbed absent manifest error. Socorro, supra at 942.
The trial court allocated the DOTD with 75% of fault and Flint, the deceased driver of the vehicle that crossed the center line, with 25% of the fault. In applying the factors as set forth in Socorro and Watson to assess the nature of the conduct of each party, we find the trial court was not clearly wrong nor did it commit manifest error in its allocation of fault for the following reasons.
The evidence shows that the portion of Highway 107 at the accident site, possessed many holes, crevasses, and cracks going both horizontally and vertically which would cause a small car, such as that driven by Flint, to lose stability when negotiating the curve. Further, the DOTD failed to maintain the road properly which posed a serious risk to drivers. Inspection of the roadway once every two weeks by employees of the DOTD should have revealed the dangerous propensity of Highway 107 at the accident site, regardless of whether the DOTD received reports of the road's condition from motorists. Moreover, the DOTD failed to repair the road to eliminate the defects.
The evidence further shows that Flint was unfamiliar with the road at the accident site having only driven on it approximately 15 times during daylight hours only. Testimony of Henry Lucas, III, Flint's fiance' the owner of the car driven by Flint, revealed that Flint had only driven the borrowed car one other time, a couple *590 of weeks before the accident. Flint proceeded to drive late at night on Highway 107 and, being unfamiliar with this roadway, should have exercised more caution upon encountering the crevices and potholes.
A comparison of the respective degrees of causation regarding each party's breach of their respective duties, supports the trial court's conclusions as to allocation of fault.

C. Application of LSA-R.S. 13:5106 and Quantum
The DOTD claims that the trial court erred in failing to limit the aggregate general damage awards to $500,000.00 as mandated by LSA-R.S. 13:5106. We disagree. Each party's demand for enforcement of a legal right against each defendant is regarded as a separate action which may be cumulated in a single suit where there is a community of interest, each of the actions is within the jurisdiction of the court and at the proper venue, and all actions are mutually consistent and employ the same form of procedure. Texas Gas Transmission Corporation v. Gagnard, 223 So.2d 233, 237 (La.App. 3d Cir.1969); LSA-C.C.P. art. 463 (1993).
The trial court awarded Ryland, widower of the deceased, $468,750.00 in general damages. On behalf of his two minor daughters, Ryland was awarded $206,250.00 on behalf of each child. This court has previously allowed each party in a suit against the DOTD to receive the maximum amount although the total awarded in general damages exceeded $500,000.00. See, Mitchell v. State, through DOTD, 596 So.2d 353, 357 (La.App. 3d Cir.1992), writ denied, 600 So.2d 680 (La.1992). No single award, in the instant case, exceeded the statutory limit set by LSA-R.S. 13:5106; thus, this assignment of error is without merit.
Ryland asserts that the statute is an affirmative defense which the DOTD failed to plead and, therefore, the DOTD should not be permitted to avail itself of the benefit of the cap. This assertion by Ryland is without merit. See, Mitchell, supra where this court held that LSA-R.S. 13:5106 does not create an affirmative defense but imposes a limitation on liability of the State or its agencies for general damages.
Finally, the DOTD urges that the trial court awarded excessive damages. Again, we disagree. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) sets forth the applicable law:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award.... Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court... It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence." Coco, supra at 335.
When damages are insusceptible of precise measurement, much discretion is left to the trial court to assess reasonable damages. LSA-C.C. art. 1999. Absent an initial determination that the trial court's great discretion has been abused under the facts of this case, we cannot disturb the trier's award. Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978); Mitchell v. State, through DOTD, 596 So.2d 353 (La. App. 3d Cir.1992).
It is apparent that the trial judge considered the consequences to Ms. Ryland's family due to her death when he stated:
"Mr. Ryland presented himself to the court as a pathetic individual.... Mr. Ryland was, obviously, leading a happy, almost idyllic, life with his new wife, Mrs. Karen Ryland. Their's was a marriage based on a loving partnership. They did everything together, including recreational pursuits as well as work efforts. They were building a home ... the marriage produced two beautiful *591 twin daughters ... who celebrated their 7th birthday on the day of trial. Mrs. Ryland was ... a good and loving wife and an excellent mother. The two children were robbed of a lifetime of a loving and nurturing mother, Mr. Ryland has been reduced to a trembling, tearful man who seeks the solace of alcohol ... now. Mrs. Ryland ... was the chief bread winner for the family. She was a nurse ... and was well regarded by her employers."
The evidence also shows that the children, Joy and Katie, have experienced a severe change in their life-style since the death of their mother. The age of their grandparents limits the amount of help Mr. Ryland can expect from them. Their eating, dressing and school habits, due to Mr. Ryland's emotional state and his inability to cook as well as Ms. Ryland did, have deteriorated. It is also clear that Ms. Ryland was held in high regard by her employers at Humana Hospital and that she intended to take advantage of the fringe benefits that she would have been entitled to after three months of employment by Humana.
The trial court did not abuse its discretion in granting the general damage awards to Mr. Ryland and his twin seven year old daughters or the award to Mr. Ryland for the loss of past and future income.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the appellant, State of Louisiana, through the Department of Transportation and Development.
AFFIRMED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
With respect I dissent from the majority's affirmance of the trial court's holding that the condition of Louisiana Highway 107 was a cause in fact of the unfortunate accident which claimed the life of Karen Ryland. All that plaintiffs showed was a possibility.
Plaintiffs proved that at the place of the accident the roadway surface was in a state of disrepair, the exact nature of which is not absolutely clear. Nevertheless, beyond this fact, there are no facts to connect the road condition with the obvious fact that the vehicle driven by Debbie Flint left its lane of traffic, crossed the center line and collided with the vehicle driven by Karen Ryland. Both drivers were killed, and there were no witnesses to the accident.
As the majority notes, causation is an issue of fact. Moreover, triers of fact are empowered by law to make reasonable inferences of fact. However, triers of fact are not authorized to make unwarranted assumptions as to causation where there are insufficient facts to supply the basis for reasonable inferences. In this case there is absolutely nothing which permitted the trial court to jump from a finding of a defective road surface to the finding that Debbie Flint's vehicle coursed from her lane of traffic into Karen Ryland's lane because of the road condition.
Under our law, Debbie Flint is presumed to have been at fault, and her fault was a cause in fact of the accident. As to the State, the plaintiffs had a burden of proof. It was not sufficient to merely prove negligence; plaintiffs had the additional burden of proving causation, that is, that Debbie Flint lost control of her vehicle because of the condition of the roadway. There are no connective facts to link the roadway conditions with the fact that Debbie Flint's vehicle left its lane. We might as well speculate that she went to sleep at the wheel, that her attention was momentarily diverted away from watching the highway or that she was spooked by an animal which suddenly darted across the road in front of her.
The majority in this case has misapplied the manifest error rule. We are not presented with a case where the rule required deference to the trier of fact's resolution of conflicting facts or of reasonable inferences from proven facts. This is a case of no *592 facts to support a finding of cause in fact. The trial court was clearly wrong in its finding of causation. The trial court took a showing of possibility (questionable at that) and reared it into a finding of actual fact. This was error. Derouen v. State Farm Mut. Auto. Ins. Co., 445 So.2d 139 (La.App. 3d Cir.1984). The majority in its opinion simply overlooks the failure of plaintiffs to establish cause in fact relative to the highway condition.
For the foregoing reason, I dissent.