869 So.2d 87 (2004)
Nancy LOCKETT and Ronny Lockett, Husband and Wife
v.
The STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2003-C-1767.
Supreme Court of Louisiana.
February 25, 2004.
Rehearing Denied April 23, 2004.
*89 Charles C. Foti, Jr., Attorney General, Shows, Cali & Berthelot, Ronnie J. Berthelot, Edmond W. Shows, Carlos A. Romanach, Special Assistant Attorneys General, for applicant.
Cardenas Law Firm, Leonard Cardenas, III, Baton Rouge, for respondent.
Kean, Miller, Hawthorne, D'Armand, McCowan & Jarman, John F. Jakuback, Bradley C. Myers, Donna V. Yelverton, Baton Rouge, for amicus curiae.
KNOLL, Justice.
This civil case addresses the legal question of whether multiple $500,000 caps are allowed under La. R.S. 13:5106(B)(2) in wrongful death actions brought against the State. Plaintiffs' brought a wrongful death action against the State through the Department of Transportation & Development ("DOTD") for their daughter's death as a result of an automobile accident that happened at a DOTD controlled intersection. The district court found DOTD partially liable and awarded each parent $500,000 in general damages. The court of appeal affirmed. We granted writ primarily to resolve a split among the circuits over whether the cap for wrongful death damages provided in La. R.S. 13:5106(B)(2) is applied "per death victim" or "per plaintiff." We further address whether the district court's finding of partial liability against DOTD constituted manifest error. Lockett v. State, Dept. of Transp. and Development, 03-1767 (La.10/17/03), 855 So.2d 745. For the following reasons, we find the cap is to be applied "per plaintiff" for the wrongful death of any one person and affirm the decisions of the lower courts finding DOTD partially liable for the accident.

FACTS AND PROCEDURAL HISTORY
This case arises out of an automobile accident which occurred on July 18, 1998, at the intersection of Louisiana Highway 19 and Groom Road in the City of Baker. *90 Katy Lockett, the daughter of Nancy and Ronny Lockett, was a passenger in a vehicle driven by Miranda Britt Rupnarian ("Miranda"). As the vehicle proceeded in a southerly direction along Louisiana Highway 19, a four lane undivided highway, Miranda attempted to negotiate a left turn from the southbound lane of Louisiana Highway 19 eastbound onto Groom Road. The traffic signal at the intersection facing Miranda provided for a protected left turn on the "green arrow" with a permissive turn on the "green globe." As Miranda approached the intersection, the signal facing her was a green globe.
Miranda was in the process of executing the left turn at the intersection when another vehicle, traveling in the outside lane of traffic in a northerly direction along Louisiana Highway 19, collided with her vehicle. Katy Lockett died as a result of the accident, and her parents, Nancy and Ronny Lockett, brought the instant lawsuit against DOTD, alleging DOTD was responsible for the existence of an unreasonably dangerous condition at the intersection which caused the accident.
Following a trial on the merits, the jury returned a verdict in favor of the plaintiffs, assessing Miranda with thirty-five percent (35%) liability and DOTD with sixty-five percent (65%). The jury also awarded general damages in the sum of $500,000 to each plaintiff, as well as $100,000.00 for medical expenses and $10,000 in funeral expenses. Although the district court denied both parties' motions for judgment notwithstanding the verdict to set aside and modify the jury's apportionment of fault, it did grant DOTD's motion for remittitur, reducing the funeral expenses award to $7,991.24 and the medical expenses to $27, 106.37.
DOTD suspensively appealed the judgment. The First Circuit Court of Appeal found no manifest error in the jury's factual findings and affirmed the judgment finding DOTD liable and the allocations of fault. Lockett v. State, Dept. of Transp. and Development, 02-0651 (La.App. 1 Cir. 4/2/03), 844 So.2d 949. The Court of Appeal also affirmed the jury's award of general damages in the amount of $500,000 to each plaintiff, finding these awards did not violate the statutory cap set by La. R.S. 13:5106(B)(2). DOTD sought rehearing, which the Court of Appeal denied. This Court granted DOTD's writ application to review the issue of liability and to resolve the split among the circuits over the statutory cap on wrongful death damages.

LAW AND ANALYSIS

La. R.S. 13:5106(B)(2)
The amount of general damage awards for wrongful death actions brought against a State entity are controlled by La. R.S. 13:5106(B)(2). Because La. R.S. 13:5106 limits the damages of the State in derogation of the general rights of tort victims, any ambiguities in the statute should be strictly construed against coverage. See David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 11 (La.7/2/03), 849 So.2d 38, 47 (interpreting La. R.S. 9:5628); Conerly v. State, 97-0871, p. 3 (La.7/8/98), 714 So.2d 709, 710 (interpreting La. R.S. 40:1299.39). On the other hand, legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent. La.Rev.Stat. § 1:4 (2004); La. Civ.Code art. 2 (2004); Conerly, 97-0871 at p. 3, 714 So.2d at 710; Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the *91 Legislature. La. Civ.Code art. 9 (2004); Conerly, 97-0871 at p. 3-4, 714 So.2d at 710-11; Ruiz, 97-2412 at p. 4, 713 So.2d at 444. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. La. Civ. Code arts. 10 and 11 (2004); Conerly, 97-0871 at p. 4, 714 So.2d at 711; Ruiz, 97-2412 at p. 4, 713 So.2d at 444. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La.Rev.Stat. § 1:3 (2004); La. Civ.Code. arts. 12 and 13; Conerly, 97-0871 at p. 4, 714 So.2d at 711; Ruiz, 97-2412 at p. 4-5, 713 So.2d at 444. If application of the foregoing rules of interpretation fails to definitively illuminate the Legislature's intent, only then should the rule of strict construction apply to the interpretation of laws in derogation of common rights such as La. R.S. 13:5106(B)(2). See Conerly, 97-0871 at p. 4, 714 So.2d at 711; Ruiz, 97-2412 at p. 5, 713 So.2d at 444-45.
La. R.S. 13:5106(B)(2) provides:
In all suits for wrongful death of any one person, the total amount recoverable, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars. (Emphasis added).
The use of the word "all" in this limitation of recovery section renders this provision susceptible of several meanings. On the one hand, the pertinent phrase can be read as providing a single cap for each individual action for wrongful death of any one person. On the other hand, the pertinent phrase can be read as providing a single cap for all actions for wrongful death of any one person. For example, Section B can be read as providing that the total amount recoverable in connection with any one individual claim for wrongful death of any one person shall not exceed $500,000, or that the total amount recoverable in connection with all claims for wrongful death of any one person shall not exceed $500,000. Finding the language of the statute is ambiguous, we must endeavor to ascertain the Legislature's intent and purpose in enacting La. R.S. 13:5106(B)(2).
One particularly helpful guide in ascertaining the intent of the Legislature is the legislative history of the statute in question and related legislation. Theriot v. Midland Risk Ins. Co., 95-2895, p. 4 (La.5/20/97), 694 So.2d 184, 186. Moreover, the Legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law. Travelers Ins. Co. v. Joseph, 95-0200, p. 5 (La.6/30/95), 656 So.2d 1000, 1002-03. Thus, when the Legislature amends a statute that has been subject to interpretation by the courts, a court interpreting the amended statute must take into consideration the entire history of the amended statute, including its original form, the court decisions interpreting the statute in its original and amended forms, and any subsequent amendments.
The ceiling on general damages assessed against the State for wrongful death actions was first enacted in 1985. See 1985 La. Acts 452. This act was one of six separate statutory measures the Legislature enacted in 1985 to relieve the State of some of the ordinary burdens of tort liability. *92 Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874, 878 (La.1993), superceded by 1995 La. Acts 1328 (constitutional amendment to Article XII, § 10(C) of the Louisiana Constitution). Upon its original enactment, La. R.S. 13:5106(B)(2) provided:
In any suit for wrongful death, the total amount recoverable, exclusive of medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars.
La.Rev.Stat. § 13:5106(B)(2)(1986).
Delineating its perceived good reasons prompting the enactment of the ceiling on general damages, the Legislature in La. R.S. 13:5106(E) found and recited:
(1) That judgments against public entities have exceeded ability to pay on current basis.
(2) That the public fisc is threatened by these judgments to the extent that the general health, safety, and welfare of the citizenry may be threatened.
(3) That the limitations set forth in this Section are needed to curb the trend of governmental liability abuses, to balance an individual's claim against the needs of the public interests and the common good of the whole society, and to avoid overburdening Louisiana's economy and its taxpaying citizens with even more new and/or increased taxes than are already needed for essential programs.
(4) That the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the constitution.
La.Rev.Stat. § 13:5106(E) (1986); see also, Chamberlain, 624 So.2d at 878. In short, the legislative goal prompting the enactment of the statutory ceiling was to protect the public fisc. Chamberlain, 624 So.2d at 878; see also, Linda J. McKinnis, Comment, Limiting Strict Liability of Governmental Defendants: The Notice Requirement of the 1985 Legislation, 46 La. L.Rev. 1197 (1986).
In Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874 (La.1993), this Court declared La. R.S. 13:5106(B)(1) unconstitutional, finding the provision contravened the proscription against sovereign immunity from substantive tort liability provided in Article XII, Section 10(A) of the Louisiana Constitution. Chamberlain, 624 So.2d at 881.
In response to Chamberlain in 1995, the Legislature passed Act 1328 which proposed an amendment to Article XII, Section 10(C) of the Louisiana Constitution to allow the Legislature to "limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." See 1995 La. Acts 1328; Castille v. State ex rel. Dept. of Transp. & Development, 99-1334, p. 1 (La.App. 3 Cir. 2/2/00), 758 So.2d 823, 825, writ denied, 00-0711 (La.4/28/00), 760 So.2d 1177. Louisiana voters approved Act 1328, and the act became effective on November 23, 1995. Castille, 99-1334 at p. 1, 758 So.2d at 825. In anticipation of such approval, the Legislature amended La. R.S. 13:5106 "in accordance with and based upon the legislative authority provided for in the proposed constitutional amendment to Article XII, Section 10 of the Constitution of Louisiana."[1]See Digest, 1995 House Bill No.1936.
*93 As amended, La. R.S. 13:5106(B)(2) provided:
In any suit for wrongful death, the total amount recoverable, exclusive of medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed the limit of liability in effect at the time of judicial demand. On the effective date of this Subsection, the limit of liability shall be seven hundred fifty thousand dollars. Beginning January 1, 1997, and on that date every year thereafter, the limit of liability shall be the limit established annually by the commissioner of financial institutions as set forth in Paragraph (3) of this Subsection.
La.Rev.Stat. § 13:5106(B)(2)(1996). Accordingly, the 1995 amendments to this subsection increased the maximum liability for the State in wrongful death actions to $750,00.00. The Legislature retained the language set forth in Subsection E as its statement of purpose and intent.
Interestingly, the Legislature again amended La. R.S. 13:5106 in 1996 "to change the limitation in suits against the state, a state agency, or political subdivision for personal injury or death from $750,000 ... to $500,000 limitation on general damages." See Digest, 1996 House Bill 239. Prior to its enrollment as 1996 La. Acts 63 of the First Extraordinary Session, House Bill 239 underwent multiple amendments during the First Extraordinary Session of the 1996 Legislature. While in the Senate, the phrase "any suits for wrongful death," which appeared in all other versions of Subsection B(2), was substituted with the phrase "all suits for wrongful death of any one person." See 1996 La. Legis. J. & Calendar 437, April 18, 1996 (Senate).[2] As amended in 1996, La. R.S. 13:5106(B)(2) now provides:
In all suits for wrongful death of any one person, the total amount recoverable, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars.[3]
In this case, DOTD asserts that a "per death victim" construction of La. R.S. 13:5106(B)(2) is entirely in keeping with the Legislature's intention in enacting La. R.S. 13:5106 in the first place, and further, that the Legislature intentionally changed the phrase "any suit" to "all suits" for this purpose.
After reviewing the legislative history of this statute, we find the Legislature's intent does not clearly require a "per death victim" construction over a "per plaintiff" construction, especially given the conflicting interpretations of this provision in the circuit courts. Ryland v. Liberty Lloyds Ins. Co., 617 So.2d 583, 590 (La.App. 3d Cir.1993)(applying a "per plaintiff" construction to La. R.S. 13:5106(B)(2)), rev'd on other grounds, 93-1712 (La.1/14/94), 630 So.2d 1289; Ly v. State Through Dept. of Public Safety and Corrections, 633 So.2d 197, 207 (La.App. 1st Cir.1993) (applying *94 a "per plaintiff" construction to La. R.S. 13:5106(B)(2)), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835; Vallien v. State ex rel. Dept. of Transp. and Development, 01-0566, p. 9-13 (La.App. 3 Cir. 3/27/02), 812 So.2d 894, 901-03 (applying a "per victim" construction to La. R.S. 13:5106(B)(2)), writ denied, 02-1184 (La.6/14/02), 818 So.2d 785.
Moreover, we note with significance that when the Legislature amended this statute in 1996, the Ly and Ryland decisions applying the wrongful death cap to each plaintiff had been rendered and were final in 1994. Keeping in mind that the Legislature is presumed to be aware of these court decisions construing this statute, if the Legislature disagreed with these court decisions when it subsequently amended the statute it could have said so and could have changed the wording of the statute to restrict the total amount recoverable to one cap for all claims. It did not. While the amendment addresses all suits for wrongful death of any one person, it does not restrict the application of the cap for all claims.
We further note that the first phrase of La. R.S. 13:5106(B)(2) addresses the State's potential exposure to liability for the wrongful death of any one person: "In all suits for wrongful death of any one person." The wording of the statute then goes on to cap the total amount recoverable to $500,000, but does not restrict the cap for all claims: "the total amount recoverable... shall not exceed five hundred thousand dollars."
Most importantly, we note La. C.C. art. 2315.2 governs Louisiana's wrongful death action and sets forth a hierarchy of classes of beneficiaries entitled to bring such actions for the wrongful death of another. La. C.C. art. 2315.2 clearly contemplates and allows for multiple beneficiaries in each of its four classes. All beneficiaries in the same dominant class have the right to bring their own individual wrongful death action even though all the beneficiaries seek recovery for the damages they individually sustained as a result of the death of the same person, e.g. the surviving spouse and children of a deceased person may all bring separate actions to recover the damages they sustained as a result of the wrongful death of that person. Each party's demand for enforcement of this legal right is regarded as a separate action which may be cumulated in a single suit where there is a community of interest, each of the actions is within the jurisdiction of the court and at the proper venue, and all actions are mutually consistent and employ the same form of procedure. La.Code Civ. Proc. art. 463 (2004); Ly, 633 So.2d at 207; Ryland, 617 So.2d at 590. In their individual actions, each plaintiff could recover damages far exceeding $500,000 in general damages. Thus, the Legislature's primary intent of protecting the public fisc would be met by capping each plaintiff's general damage award at $500,000.
In short, both the "per death victim" and "per plaintiff" construction of the provisions of La. R.S. 13:5106(B)(2) are arguably equally plausible. Because the application of the rules of interpretation failed to illuminate definitively the Legislature's intent, the rule of strict construction must apply to the interpretation of laws in derogation of common rights. See Conerly, 97-0871 at p. 4, 714 So.2d at 711; Ruiz, 97-2412 at p. 5, 713 So.2d at 444-45. Because La. R.S. 13:5106(B)(2) provides a statutory cap on damages in derogation of the rights of La. C.C. art. 2315.2 beneficiaries, we must construe its provisions strictly in favor of the beneficiaries. Accordingly, we find La. R.S. 13:5106(B)(2) allows for multiple $500,000 caps in wrongful *95 death actions in accordance with a "per plaintiff" construction.

Liability of DOTD
A plaintiff may proceed against the State through DOTD under either a theory of negligence or a theory of strict liability. Netecke v. State ex rel. DOTD, 98-1182, p. 7 (La.10/19/99), 747 So.2d 489, 494. In order for DOTD to be held liable, the burden of proof is the same under either theory, and the plaintiff bears the burden of showing that:
(1) DOTD had custody of the thing that caused the plaintiff's injuries or damages;
(2) the thing was defective because it had a condition that created an unreasonable risk of harm;
(3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and
(4) the defect in the thing was a cause-in-fact of the plaintiff's injuries.
Id.
Whether the condition of a road is unreasonably dangerous is a question of fact and should only be reversed if it is manifestly erroneous or clearly wrong. Petre v. State ex rel. Dept. of Transp. and Development, 01-0876, p. 7 (La.4/3/02), 817 So.2d 1107, 1111; Ledoux v. State Through Dept. of Transp. and Development, 98-0024, p. 3 (La.9/18/98), 719 So.2d 43, 44-45. "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error." Canter v. Koehring, Co., 283 So.2d 716, 724 (La.1973). "Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Id.
In this case, the jury found an unreasonably dangerous condition existed at the intersection that was a substantial factor in causing plaintiffs' damages, and, as a result, DOTD was partially liable to the plaintiffs. We find, as did the court of appeal, that this determination by the jury was not manifestly erroneous or clearly wrong.
DOTD argues it proved it had discharged its duty of care to the motoring public because the uncontroverted evidence at trial showed Louisiana Highway 19 and the intersection at issue, with its signs, signage and road markings, met the AASHTO and MUTCD standards or requirements. Therefore, DOTD was presumed to be without fault and the plaintiffs failed to rebut this presumption. DOTD further contends the accident could have been prevented had Miranda merely waited sixty seconds for the protected green arrow.
DOTD has a duty to its travelers to keep the State's highways in a reasonably safe condition for persons exercising ordinary care. See Petre, 01-0876 at p. 8, 817 So.2d at 1112. As the court of appeal noted in this case, it is not disputed that a blind spot was created at the intersection in the outside lanes when, as in this instance, two opposing vehicles were each stopped at the intersection and waiting to make left turns onto Groom Road from the north and south inside lanes. Lockett, 02-0651 at p. 7, 844 So.2d at 954. This "cone of obscurement" coupled with the permissive green globe lulled the left-turning driver into a false sense of being able to safely negotiate the left turn when in fact it is a perilous maneuver. Moreover, the *96 evidence at trial revealed that DOTD had been aware of the flawed condition of the intersection and the history of a high accident rate at the intersection as a result of the blind spot.
Additionally, Dr. Olin K. Dart, a traffic engineer with a specialty in highway design, safety, and accident reconstruction, testified that the addition of a fifth lane would have resolved the unreasonably dangerous condition created by the blind spot. In the absence of adding a fifth lane which would have admittedly involved substantial capital outlay, an expense which DOTD contends prevented it from constructing the lane, the State could have feasibly provided a "turn on arrow only" signal to prevent accidents such as the one at issue.
Accordingly, after viewing all the evidence, we find no manifest error in the jury's finding DOTD negligent and its allocation of sixty-five percent fault to DOTD.

DECREE
For the foregoing reasons, we affirm the judgments of the trial court and court of appeal.
AFFIRMED.
VICTORY, J., dissents and assigns reasons.
VICTORY J., dissenting.
I dissent from the majority's interpretation of La. R.S. 13:5106(B)(2). In relevant part, the statute says, "In all suits for wrongful death of any one person, the total amount recoverable ... shall not exceed $500,000." The first rule of statutory construction states that "when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent." La. Civ.Code art. 9; Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128-1129. Since the words "any one person" modify the "wrongful death" which has occurred, it is clear the legislature intended for the $500,000 limit to be applied regardless of the number of claimants. In fact, that is what the statute says: only a total of $500,000 can be recovered for the wrongful death of any one person in all lawsuits for the death of that person.
Yet, the majority states La. R.S. 13:5106(B)(2) can be read, "... as providing a single cap for each individual action for the wrongful death of any one person." [emphasis added] This is simply not correct. There is nothing in the language of La. R.S. 13:5106(B)(2) that speaks of an "action" at all, much less an "individual action." Only by adding language that is not in the statute can the majority reach the conclusion that the statute can plausibly be construed in this way. The majority's opinion violates the first rule of statutory construction.
Further, one would wonder why, in 1985, the Legislature, in an effort to protect the public fisc, would bother to place a $500,000 cap on an individual action when the awards given prior to that time for a wrongful death action were rarely, if ever, in excess of half that amount.
NOTES
[1] "Effective upon passage by voters of Louisiana of proposed constitutional amendment to Art. XII, Sec. 10 which originated as H.B. No. ___ of the 1995 R.S." See Digest, supra.
[2] Also by this date, the Senate, by floor amendment, deleted the phrase "including all derivative claims" from Subsection B(2) at the behest of Troy Bain, Past President of the Louisiana Trial Lawyers, because "there are no derivative claims in wrongful death actions." Minutes of Senate Comm. of Judiciary A, April 16, 1996, p. 11.
[3] In 2000, the Legislature once again amended La. R.S. 13:5106. See 2000 La. Acts 1st Ex.Sess. 20, § 1. However, the amendment provided no substantive changes to Subsection B(2).