WELCH, J.
^Plaintiff, James A. Wayne, Sr., appeals a summary judgment rendered in favor of defendant, Capital Area Legal Services Corporation (CALSC), finding that CALSC is not a public body subject to Louisiana’s Open Meeting Law. We affirm.
BACKGROUND
The background of this case has been set forth by this court in Wayne v. Capital Area Legal Services Corporation, 2011-1988 (La.App. 1st Cir.9/26/12), 108 So.3d 103, writ denied, 2012-2343 (La.4/5/13), 110 So.3d 1072 (Wayne I). In 2007, CALSC and Mr. Wayne entered into a contract pursuant to which Mr. Wayne was to serve as CALSC’s executive director for five years. Prior to the expiration of that term, CALSC’s Board of Directors (Board) voted to terminate Mr. Wayne from his position. Mr. Wayne filed a lawsuit against CALSC in which he alleged that his termination was void because CALSC violated the Open Meetings Law in numerous respects.[1] The Board later held another hearing at which time it voted to ratify Mr. Wayne’s termination. That action spurred a second lawsuit by Mr. Wayne against CALSC in which he alleged that the second termination hearing was also replete with procedural irregularities in violation of the Open Meetings Law.
Mr. Wayne’s lawsuits were consolidated in the trial court. CALSC filed a motion for summary judgment in which it asserted, among other things, that it is not a public body subject to the Open Meetings Law. The trial court agreed, and granted summary judgment in favor of CALSC on that issue and on the alternative grounds that CALSC did not violate the Open Meetings Law and that federal law | ^preempted Louisiana law. The court signed a judgment dismissing Mr. Wayne’s claims with prejudice on July 13, 2011.[2]
Mr. Wayne appealed the ruling to this court. This court held that the trial court erred in granting the motion for summary judgment on the issue of CALSC’s status as a public body for the purpose of the Open Meetings Law. In addressing the issue of CALSC’s status, this court identified four factors that have been considered by courts in determining whether an entity is a public body for the purpose of the Open Meetings Law: (1) whether the entity performs a government function or performs a function, which, by law, is entrust *429 ed to other public bodies; (2) whether the entity is funded by public money; (3) whether the entity exercises policy-making, advisory, and administrative functions; and (4) whether there is a connexity between the functions of the entity and the functions of a particular public body identified as such in the statutory definition of “public body” contained in the Open Meetings Law (the connexity element). Examining all of these factors in light of the evidence on the motion for summary judgment, this court found the evidence insufficient to establish, as a matter of law, that CALSC is not a public body for the purposes of the Open Meetings Law. In so doing, this court observed that there was insufficient evidence on the motion to resolve issues of material fact regarding the connexity element that had been recognized by the Louisiana Supreme Court in Spain v. Louisiana, High School Athletic Association, 398 So.2d 1386 (La.1981). This court remanded the matter to the trial court to conduct an evidentiary hearing on the issue of whether CALSC is a public body for the purpose of the Open Meetings Law. Wayne I, 108 So.3d at 116.
^Shortly after this court handed down its decision in Wayne I, the supreme court reversed its decision in Spain, concluding that its reliance on the connexity element in finding the Louisiana High School Athletics Association (LHSAA) to be a public body subject to the Open Meetings Law was flawed. Louisiana High School Athletics Association, Inc. v. State, 2012-1471 (La.1/29/13); 107 So.3d 583, 606-607 (sometimes referred to as the LHSAA decision). Soon thereafter, in the instant case, the supreme court denied CALSC’s application for writs challenging this court’s decision in Wayne I, observing that the matter had been remanded for an evi-dentiary hearing and that the trial court could consider all bases for summary judgment in light of the LHSAA decision. Wayne, 2012-2343 (La.4/5/13), 110 So.3d 1072.
On remand, the trial court held an evi-dentiary hearing on the issue of CALSC’s status as a public body, during which Mr. Wayne introduced the entire record including all evidence, testimony, and affidavits that were previously entered into in connection with the original motion for summary judgment. The parties also entered a joint stipulation in which they stipulated to the following facts for the purpose of the evidentiary hearing:
1) CALSC was incorporated in 1958 by the Baton Rouge Bar Association as the Legal Ad Society of Baton Rouge;
2) CALSC is a private, non-profit corporation;
3) CALSC has never been sponsored by any governmental resolution, nor designated as an agency by any political subdivision, but the Legislature has expressly authorized public funding for legal aid societies such as CALSC;
4) CALSC’s operations are funded by a combination of public and private funds, though the largest source of its funding are grants awarded by the Legal Services Corporation, a nonprofit corporation created by Congress;
5) In its last full fiscal year, CALSC’s total funding was in the amount of $2.6 million, $1.6 million of which was received from the Legal Services Corporation grant. CALSC also received $333,000 from the State of Louisiana’s Elderly Protective Services program pursuant to a contract to provide legal services to qualified elderly persons. $75,000 was received from the Attorney General’s office, and additional smaller amounts were *430 received from various parish and municipal governmental bodies in | sCALSC’s twelve parish service area. Finally, CALSC received $444,423 from the Louisiana Bar Foundation’s IOLTA and Children In Need of Care programs.
6) CALSC’s Board of Directors consists of thirty directors, seventeen of whom are attorneys, ten of whom are representatives of the clients served by CALSC, and three of whom are At-Large directors. All of CALSC’s directors volunteer and receive no income.
7) CALSC provides free legal services to low-income residents within a twelve-parish area;
8) Legal matters handled by CALSC include family, juvenile, consumer, housing, health law, public benefits, and immigration;
9) CALSC’s priorities include: preserving the home and home life of clients; maintaining or increasing the economic stability of its clients; protecting children and families; providing access to health care; protecting civil rights; providing its clients with access to the courts; assisting client groups working on significant legal problems; addressing issues affecting access to shelter, subsistence income, personal, or safety; advising, providing brief services and referrals; providing assistance with self-help representation; providing education and outreach to the community; training and educating staff, the private bar, and other service providers.
The parties jointly introduced three other exhibits, including the description of the executor director’s job, CALSC’s by-laws, and CALSC’s employee handbook.
Additionally at the hearing, Mr. Wayne testified regarding the services CALSC provided during his tenure and how the entity was funded. According to Mr. Wayne, CALSC’s role is to provide free civil legal services to poor persons in a 12-parish area, it provides a service not available to them by other means, and it benefits society by providing for the orderly process of solving disputes. He stated that when he was CALSC’s executive director, there were 169,000 eligible clients. Mr. Wayne described meetings he had with state and local officials in which he sought to obtain funding for the entity. He estimated that during his tenure, 11-12% of CALSC’s funding came from private entities such as Entergy and the remainder came from public money. However, on cross-examination, Mr. Wayne admitted that he did not count the $450,000.00 per year contribution provided by the Louisiana State Bar Association through its IOLTA program as private funding.
| (¡After examining the evidence in light of the LHSAA decision, the trial court found there was little distinction between the LHSAA and CALSC. The trial court observed that “[y]ou could almost take CALSC and put it on that Supreme Court opinion, because the factors, when they look at them, are almost identical.” The trial court granted summary judgment in favor of CALSC, ruling that it is not a public body subject to the Open Meetings Law. The court signed a judgment so decreeing, reissued its previous judgment granting CALSC’s motion for summary judgment in all other respects as to the Open Meeting Law claims, and dismissed those claims with prejudice. The trial court designated the judgment as a final judgment pursuant to La. C.C.P. art. 1915B for oral reasons assigned.[3]
*431 As instructed by the supreme court, this court will analyze the issue of whether CALSC is a public body for the purpose of the Open Meetings Law under the dictates of the LHSAA decision. In LHSAA, the LHSAA filed a motion for summary judgment in which it sought a declaration, among other things, that La. R.S. 24:518, which gives the legislative auditor the power to audit and review the financial records of all “quasi public agencies or bodies,” did not apply to it. The term “quasi public agency or body” is defined in that statute to include any organization subject to the Open Meetings Law. La. R.S. 24:51SA(l)(b)(v). The Legislative Auditor argued that the LHSAA is a quasi public entity because it is subject to the Open Meetings Law and because some of its membership dues come from public high schools. The trial court denied LHSAA’s motion for summary judgment, primarily because the supreme court had held in Spain that the LHSAA is a public body for the purpose of the Open Meetings Law.
|7In Spain, the supreme court ruled that the LHSAA was a public body under that portion of the Open Meetings Law which defined the term “public body” to include a “committee or subcommittee” of any of the public bodies listed in the definition. In so doing, the court focused on these factors: (1) the LHSAA performed a function, which, by law, is entrusted to various bodies established for the regulation of public education; (2) it is funded by public money earned by state schools at athletic events; (3) it had established a comprehensive set of rules and regulations governing how public schools and their students must conduct themselves regarding athletic and academic endeavors, all with the acquiescence of the legislature and the state and local school boards; (4) there was a close connexity between the regulatory functions of the LHSAA and the regulatory functions of public bodies listed in the definition of “public body” in the Open Meetings Law, as the LHSAA performed a major policy-making, advisory, and administrative function in an area within the primary control of those public bodies. Spain, 398 So.2d at 1390.
In LHSAA, the supreme court reversed Spain, finding the reasoning therein to be flawed. The court held that the connexity factor, so heavily relied on by it in the earlier Spain decision, is absent from the statutory definition of “public body” found in the Open Meetings Law, The supreme court concluded that because the appropriate starting point for statutory interpretation is the language of the statute itself, the Spain court had erred in looking beyond the plain language of the statute to find that LHSAA is a committee or subcommittee of other bodies identified in the definition of the term “public body.” The court then noted that Black’s Law Dictionary defined the term “committee” as a “subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action.” The court concluded that under a plain reading of the Open Meeting Law’s definition of a public body, the phrase “committee or ^subcommittee” of any of these bodies refers to a commit *432 tee formed by the public body itself. However, the supreme court observed that there was no evidence to suggest that LHSAA was formed as a committee or subcommittee of any public body; there was no evidence any public body ever referred business to the LHSAA for its consideration, investigation, oversight or action; LHSAA was formed as a Louisiana nonprofit corporation; and evidence showed that LHSAA had separated itself from the public entities and thus any notion that it might be a committee or subcommittee thereof. LHSAA, 107 So.3d at 605-607.
We shall examine the issue of whether CALSC is entitled to summary judgment decreeing that it is not a public body for the purpose of the Open Meetings Law in light of the analysis required by the LHSAA decision.[4] We begin with an examination of the statutory language. Louisiana Revised Statute 42:14 mandates that every meeting of a public body shall be open to the public unless closed pursuant to other provisions of the act. The term “public body” is defined in La. R.S. 42:13 as follows:
“Public body” means village, town, and city governing authorities; parish governing authorities, school boards and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this paragraph.
Specifically, the statute defines the term “public body” to include “any other state, parish, municipal, or special district boards, commissions, or authorities, and those |;iof any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions.” Mr. Wayne contends that CALSC constitutes an “authority” and thus is a public body subject to the Open Meetings Law.
The term “authority” is not defined in the Open Meetings Law. Black's Law Dictionary defines the term “authority” as “a governmental agency or corporation that administers a public enterprise” and uses a “transit authority” as an example in the definition. Black’s Law Dictionary 142-143 (8th ed.2004). Mr. Wayne contends that CALSC is an authority because it is a corporation that administers a “public enterprise.” He notes that while the term “public enterprise” does not have a generally accepted definition, Louisiana jurisprudence has recognized the following endeavors to be “public enterprises”: the building of railroads, the construction of levees, and the establishment of reservoirs. Mr. Wayne submits that there are common characteristics of public enterprises and that CALSC shares all of these characteristics. First, he stresses that CALSC provides legal services to those without financial means in a twelve-parish area, benefitting not just the individuals who use its services, but society as a *433 whole, by ensuring that all persons have equal access to the legal system and legal services. Secondly, CALSC is funded by public money to promote this public good. Mr. Wayne insists that CALSC meets the third characteristic of a public enterprise because indigent legal services are most effective when provided by society, rather than by individuals. Lastly, Mr. Wayne contends that CALSC performs a function similar to the Louisiana Public Defender Board, which provides legal services to indigent criminal defendants, which he asserts is undoubtedly a public enterprise.
In LHSAA, the supreme court directed courts away from such comparisons and mandated that courts ascertain the intent of the legislature using the principles of statutory construction in determining whether a particular entity is a public body hnfor the purpose of the Open Meetings Law. Those principles are as follows: when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislature’s intent. La. C.C. art. 9, Lockett v. State, Department of Transportation and Development, 2008-1767 (La.2/25/04), 869 So.2d 87, 90-91. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words must be given their generally prevailing meaning. Lock-ett, 869 So.2d at 91. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. Id.
Louisiana Constitution article 6 § 19 authorizes the legislature, by general or local law, to create or authorize the creation of “special districts, boards, agencies, commissions, and authorities of every type,” and to grant the special districts, boards, agencies, commissions, and authorities so created with the rights, powers, and authorities it deems proper, including but not limited to, the power of taxation and the power to incur debt and issue bonds. (Emphasis added). This provision appears in the 1974 constitution. Thereafter, in 1979, the legislature enacted La. R.S. 42:4.2 which added the definition of the term “public body” to the Open Meetings Law and utilized the term “authorities” therein, 1979 La. Acts No. 681, § 23. This provision was redesignated in 2010 by Act No. 861, § 1 as La. R.S, 42:13.
As CALSC points out, the revised statutes are replete with instances in which the legislature has created authorities and vested these entities with broad powers to perform designated tasks. Some types of authorities created by the legislature include: (1) the Ouachita Expressway Authority and the Louisiana | ^Transportation Authority, La. R.S. 48:2134; La. R.S. 48:2074, in which the legislature vested full corporate powers to finance, regulate, and operate any limited access or transitway to be constructed within their jurisdictions; (2) the Southeast Regional Airport Authority, created by La. R.S. 2:703 as a political subdivision to assist public entities in constructing and maintaining airports and the financing of such; (3) the East Baton Rouge Redevelopment Authority, created by La. R.S. 33:4720.151 to develop programs and implement measures to eliminate the spread of slum or blighted areas and to provide for the redevelopment of such areas; (4) the South Central Louisiana Human Services Authority, created by La. R.S. 28:872 and 874 as a political subdivision to direct the operation and management of community-based programs and services relative to mental health and substance abuse in certain parishes; (5) *434 the Coastal Port Advisory Authority, created by La. R.S. 34:3552 as an advisory authority within the Department of Transportation and Development to research and study economic development opportunities in the maritime, oil, and gas industries; (6) the Louisiana Local Government Environmental Facilities and Community Development Authority, created by La. R.S. 33:4548.4 as a political subdivision to be comprised of political subdivisions wishing to become members of the authority and vesting the authority with broad financial powers; (7) the Louisiana Energy and Power Authority, created by La. R.S. 33:4545.2 as a political subdivision with full corporate powers to provide for the generation or transmission of electric power to municipalities; and (8) Bridge and Ferry Authorities, created pursuant to the authority of La. R.S. 48:1092 and 1093 to construct or acquire toll bridges and ferries.
Considering the legislative history of La. R.S. 42:13 and employing the principles of statutory construction, we find that the legislature intended the term “authorities” to apply to entities that are created by government. We find that CALSC is not an “authority” for the purpose of the Open Meetings Law because it 112is not a creature of government. It is undisputed that CALSC is a private, non-profit corporation that was incorporated in 1958 by the Baton Rouge Bar Association. It is further undisputed that CALSC has never been sponsored by any governmental resolution, nor has it been designated as an agency by any political subdivision.
Because there is no genuine issue of material fact on the issue of CALSC’s status for the purpose of the Open Meetings Law, the trial court correctly granted summary judgment decreeing that CALSC is not a public body subject to the Open Meetings Law.
CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, James A. Wayne, Sr.
AFFIRMED.

. CALSC filed a reconventional demand alleging that Mr. Wayne breached his employment contract and seeking the return of all salary and benefits paid to him. CALSC’s damage claim was severed from Mr. Wayne's claims that the Open Meetings Law had been violated for the purpose of conducting separate trials.

. After summary judgment was signed by the trial court, a third lawsuit filed by Mr. Wayne against CALSC in the 19th Judicial District Court, in which he asserted a cause of action for wrongful termination and breach of contract, was also consolidated with these lawsuits.

. At the hearing, the trial court stated that it was designating the judgment as a final one *431 because it resolved all issues raised as to the alleged violation of the Open Meetings Law and because CALSC's reconventional demand had been severed. We note that it appears that Mr. Wayne’s third consolidated lawsuit in which he seeks damages for wrongful termination is still pending in the trial court. As this claim and CALSC’s breach of contract claim have no relationship to the adjudicated claims and there is no danger that the issues decided in this appeal will have to be considered a second time, we find no abuse of discretion in the trial court’s certification. See R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La.3/2/05), 894 So.2d 1113, 1122.

. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29.