STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0943

ELAINE LEWNAU, CHRISTY MOLAND, TERRILYNN GILLIS,
MARILYN SEIBERT, AND TOM ASWELL

VERSUS

THE BOARD OF SUPERVISORS OF SOUTHERN STATE UNIVERSITY
AND AGRIBULTURAL AND MECHANICAL COLLEGE

*Judgment Rendered:*    JAN 0 9 2020

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C681213

The Honorable Richard "Chip" Moore III, Judge Presiding

* * * * * * * *

Winston G. DeCuir, Jr.            Counsel for Defendant/Appellant
Brandon DeCuir                    Board of Supervisors of Southern
Baton Rouge, Louisiana            University and Agricultural and
                                  Mechanical College

J. Arthur Smith, III              Counsel for Plaintiffs/Appellees
J. Arthur Smith, IV               Elaine Lewnau, Christy Moland,
Baton Rouge, Louisiana            Terrilynn Gillis, Marilyn Seibert,
                                  and Tom Aswell

* * * * * * * *

Chutz, J.- Concurs in the result

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

In this case involving alleged violations of the Open Meetings Law, La. R.S. 42:11-28, the Board of Supervisors of Southern University and Agricultural and Mechanical College ("Southern") appeals a trial court judgment in favor of the plaintiffs. For the reasons set forth herein, we affirm and award additional attorney fees to the plaintiffs for defense of the appeal.

## FACTS AND PROCEDURAL HISTORY

On November 20, 2018, current and former faculty members in the Department of Speech-Language Pathology and Audiology at Southern's Baton Rouge campus, Elaine Lewnau, Christy Moland, Terrilynn Gillis, and Marilyn Seibert, filed a joint grievance with Southern. The grievance sought to address employment matters, including the termination of Moland and Gillis, the removal of Lewnau as the Department of Speech-Language Pathology and Audiology's Graduate Program Director, the reduction of Seibert's regular teaching salary, and a number of allegedly illegal workplace practices.

On December 19, 2018, Tracie J. Woods, Associate Vice President for Human Resources for the Southern University System, notified Lewnau that Southern University System President-Chancellor Ray Belton had requested that the Southern University System Grievance Committee ("Grievance Committee") review the faculty members' joint grievance and make recommendations thereon. According to Woods's letter, the Grievance Committee would review the grievance, and a grievance hearing would be scheduled in 2019.

Attached to the notice from Woods regarding the Grievance Committee review was a copy of Appendix F to the Faculty Handbook, entitled "*Faculty Grievance Procedures.*" According to the *Faculty Grievance Procedures*, the Board of Supervisors delegated its authority to handle certain categories of employee grievances to Southern's Baton Rouge campus, while reserving other

types of grievances to itself and the System President. For those grievances for which complete administrative authority has been delegated to the Baton Rouge campus, the employee's right to administrative review of her grievance will be fully exhausted following the decision of the Chancellor of the Baton Rouge campus.[1] The *Faculty Grievance Procedures* states that the Chancellor of the Baton Rouge campus shall appoint a Grievance Committee[2] to serve as a fact-finding body with regard to employee grievances and sets forth guidelines and procedures for hearings of the Grievance Committee. According to the procedures outlined therein, the Grievance Committee will make a recommendation to the Chancellor of the Baton Rouge campus for resolution of the grievance following a hearing. In grievances where the Board has delegated complete authority to the Baton Rouge Campus, there is no right to appeal the decision of the Chancellor.

On February 19, 2019, Lewnau, Moland, Gillis, and Seibert each received an email from Marla Dickerson, Chairperson of the Grievance Committee, advising that the Grievance Committee would convene on March 18 and 19, 2019 to hear the joint grievance and requesting that they clear their schedules on those dates. The email further advised "you have a right to submit a witness list, documentary support, and evidentiary support in support of your position."

Lewnau, Moland, Gillis, and Seibert attended the March 18 hearing in order to present their grievances to the committee. Tom Aswell, a professional journalist and investigative reporter who publishes an internet blog known as "The Louisiana Voice," in which he reports on matters involving Louisiana government and the activities of its officials, also attended the Grievance Committee meeting in order to report on the meeting through his blog. At the outset of the meeting, the

---

[1] Although the *Faculty Grievance Procedures* refers to both the System President and the Chancellor of the Baton Rouge campus, at some point prior to the filing of the joint grievance herein, these roles were combined into a single position, called the "President-Chancellor." The *Faculty Grievance Procedures* provided to Plaintiffs and applied to their joint grievance was apparently not updated to reflect the newly combined President-Chancellor position, creating some confusion in the application of the procedures to Plaintiffs' joint grievance.

[2] Although the *Faculty Grievance Procedures* refers to the Grievance Committee as a "Grievance Panel," it is consistently referred to elsewhere in the record as the "Grievance Committee," and will be referred to as such herein.

chairperson asked Lewnau, Moland, Gillis, and Seibert whether they wished to have an open or closed meeting, and each responded, through counsel, that they wished to have an open meeting. Nevertheless, the chairperson announced that the meeting would be closed, as the Grievance Committee had previously voted in private to have a closed meeting. Aswell was involuntarily removed from the meeting room and not allowed to observe the proceedings, and following brief opening statements given by each, Lewnau, Moland, Gillis, and Seibert, along with their attorney, were involuntarily removed from the meeting room and not allowed to observe or participate in the meeting.

On March 25, 2019, Lewnau, Moland, Gillis, Seibert, and Aswell (hereinafter "Plaintiffs") filed a petition against Southern pursuant to La. R.S. 42:25(C)[3], alleging that Southern's Grievance Committee violated the Louisiana Constitution[4] and the Open Meetings Law[5] when it voted in private to close the

---

[3] Louisiana Revised Statutes 42:25(C) provides that any person who has been denied any right conferred by the Open Meetings Law, or who has reason to believe that the provisions of the Open Meetings Law have been violated, may institute enforcement proceedings.

[4] Plaintiffs alleged that the committee violated La. Const. Art. 12, § 3, which provides that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."

[5] Plaintiffs alleged that the committee's vote to close the meeting, as well as the exclusion of the public from the meeting, violated La. R.S. 42:14(A), (B), and (C), 16, and 17(A)(1), which provide, in pertinent part:

§ 14. Meetings of public bodies to be open to the public

A.    Every meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:16, 17, or 18.

B.    Each public body shall be prohibited from utilizing any manner of proxy voting procedure, secret balloting, or any other means to circumvent the intent of this Chapter.

C.    All votes made by members of a public body shall be viva voce and shall be recorded in the minutes, journal, or other official, written proceedings of the body, which shall be a public document.

§ 16. Executive Sessions

A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:19, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:17; however, no final or binding action shall be taken during an executive session.

meeting to the public and when it removed the Plaintiffs and their attorney from the meeting. As such, Plaintiffs requested an injunction prohibiting Southern from applying, enforcing, or implementing any actions taken that were in violation of the Louisiana Constitution and the Open Meetings Law; a declaration that actions taken by the committee in violation of the law are null and void, as authorized by La. R.S. 42:24; and civil penalties, attorney fees, and costs, as authorized by La. R.S. 42:26 and 28.

Southern filed an exception of no cause of action, asserting that the Open Meetings Law is inapplicable to the Grievance Committee, since the committee is not a "public body." Southern argued that the committee, which is appointed by the President-Chancellor and whose sole authority is to make a recommendation to the President-Chancellor, does not fit within the definition of "public body" in La. R.S. 42:13(A)(3).

The exception was taken under advisement following a hearing, and the trial court later denied Southern's exception raising the objection of no cause of action, explaining:

---

The vote of each member on the question of holding such an executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:17 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of this Chapter.

§ 17. Exceptions to open meetings

A. A public body may hold an executive session pursuant to R.S. 42:16 for one or more of the following reasons:

(1) Discussion of the character, professional competence, or physical or mental health of a person, provided that such person is notified in writing at least twenty-four hours, exclusive of Saturdays, Sundays, and legal holidays, before the scheduled time contained in the notice of the meeting at which such executive session is to take place and that such person may require that such discussion be held at an open meeting. However, nothing in this Paragraph shall permit an executive session for discussion of the appointment of a person to a public body or, except as provided in R.S. 39:1593(C)(2)(c), for discussing the award of a public contract. In cases of extraordinary emergency, written notice to such person shall not be required; however, the public body shall give such notice as it deems appropriate and circumstances permit.

[T]he Grievance Committee at issue herein is making recommendations to the President-Chancellor as to whether employment should be maintained and, if so, the amount of compensation. [This] type of committee action is too important to be made in a dark room, where no one other than committee members know what factors are being considered. The actions taken by the Grievance Committee served to slam the door on Article XII, § 3 of the 1974 Louisiana Constitution and our democratic process.

Plaintiffs' request for a preliminary injunction and declaratory judgment was heard by the trial court on May 6, 2019, following which the trial court took the matter under advisement.[6] The trial court rendered judgment on May 13, 2019, reiterating its earlier ruling that the Grievance Committee constituted a "public body" for purposes of the Open Meetings Law, and finding that the Grievance Committee had violated the Open Meetings Law and Art. 12, § 3 of the Louisiana Constitution. The trial court judgment declared that all actions taken by the Grievance Committee from March 18 through the date of judgment, and all future actions affecting Plaintiffs to be taken as a consequence of or resulting from evidence introduced in any hearing before the Grievance Committee from March 18 to the date of judgment, are null and void. Further, the trial court issued a preliminary injunction enjoining Southern from enforcing, applying, or implementing any action taken in violation of the Open Meetings Law and the Louisiana Constitution. Finally, the trial court awarded Plaintiffs $8,400.00 in attorney fees, statutory damages in the amount of $5,000.00, and court costs of $638.00.

Southern filed a devolutive appeal from the May 13, 2019 trial court judgment. On appeal, Southern argues that the trial court erred in concluding that the Grievance Committee was a public body, and based on that finding, granting

---

[6] There was also a motion to consolidate before the court at the May 6 hearing; however, the trial court continued the hearing on the motion to consolidate to a later date at the request of Southern's counsel. Plaintiffs' motion sought to consolidate this suit with another suit filed by Plaintiffs against Southern and Chairperson Dickerson, alleging violations of the Louisiana Public Records Law by the Grievance Committee and Dickerson arising out of Plaintiffs' request for copies of the Grievance Committee's agenda, minutes, transcript, and audio recordings from its March 18 and 19, 2019 hearings. The motion to consolidate was eventually granted by the trial court on May 28, 2019.

declaratory and injunctive relief, as well as damages and attorney fees. Plaintiffs answered the appeal and requested additional attorney fees and costs for the additional work required to defend the appeal.

## DISCUSSION

No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. La. Const. art. XII, § 3. In connection with La. Const. art. XII, § 3, the Louisiana Legislature enacted the Open Meetings Law. The Open Meetings Law provides that "It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of [the Open Meetings Law] shall be construed liberally." La. R.S. 42:12.

The primary purpose of the Open Meetings Law and the constitutional provision ensuring the right of citizens to participate in the deliberations of public bodies is to protect citizens from secret decisions made without any opportunity for public input. *Organization of United Taxpayers and Civic Associations of Southeast Baton Rouge, Inc. v. Louisiana Hous. Fin. Agency*, 1996-2406, p. 5 (La.App. 1 Cir. 11/7/97), 703 So.2d 107, 110, *writ denied*, 1997-3007 (La. 2/6/98), 709 So.2d 745. The public has a right to know what is being considered and is entitled to direct participation in deliberations as styled by La. Const. art. XII, § 3. *Pittman v. Washington Parish Reservoir District of State*, 2005-2278 (La.App. 1 Cir. 12/20/06), 2006WL3734644, *3, citing *Wagner v. Beauregard Parish Police Jury*, 525 So.2d 166, 169 (La.App. 3 Cir. 1988).

Under the Open Meetings Law, meetings of public bodies are to be open to the public unless closed in accordance with the provisions of the Open Meetings Law. La. R.S. 42:14. Southern's arguments on appeal are all based on the premise

7

that the Grievance Committee is not a "public body," and therefore not subject to the Open Meetings Law. A "public body," for purposes of the Open Meetings Law, is defined in La. R.S. 42:13(A)(3) as:

> [V]illage, town, and city governing authorities; parish governing authorities; school boards and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this paragraph.

Southern's Board of Supervisors was created by Article VIII, § 7 of the Louisiana Constitution and granted exclusive administrative power to supervise and manage the institution, statewide agricultural program, and other programs administered through its system. See *Student Government Association of Louisiana State University and Agricultural and Mechanical College, Main Campus, Baton Rouge v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, 262 La. 849 (La. 1972). Southern's Board of Supervisors falls under the definition of "public body" as a "state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions." Thus, in order for the Grievance Committee to qualify as a public body under the Open Meetings Law, it must be a "committee or subcommittee" of Southern's Board of Supervisors. The Open Meetings Law does not define "committee or subcommittee," nor does it set forth any specific factors to be used in determining whether a body is a committee or subcommittee of any of the bodies enumerated in the statute.

In *Louisiana High School Athletics Association, Inc. v. State*, 2012-1471, pp. 31-32 (La. 1/29/13), 107 So.3d 583, 606, the Louisiana Supreme Court considered the meaning of "committee or subcommittee" for purposes of determining whether

8

a particular entity is a public body. In that case, the supreme court held that it must ascertain the intent of the legislature using the principles of statutory construction in determining whether a particular entity is a public body for the purpose of the Open Meetings Law. Those principles of statutory construction are as follows: when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislature's intent. La. C.C. art. 9, *Lockett v. State, Department of Transportation and Development*, 2003-1767, p. 3 (La. 2/25/04), 869 So.2d 87, 90-91. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words must be given their generally prevailing meaning. La. C.C. arts. 10 and 11, *Lockett*, 2003-1767 at p. 4, 869 So.2d at 91. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. *Id.* In *Louisiana High School Athletics Association, Inc.*, the supreme court concluded that because the appropriate starting point for statutory interpretation is the language of the statute itself, it is error for a court to look beyond the plain language of the statute in determining whether an entity is a committee or subcommittee of any other bodies enumerated in the definition of "public body." The supreme court noted that *Black's Law Dictionary* defined the term "committee" as a "subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action." *Black's Law Dictionary* 273 (9th ed. 2009). The supreme court concluded that under a plain reading of the Open Meetings Law's definition of "public body," the phrase "committee or subcommittee of any of these bodies" refers to a committee or subcommittee formed by the public body itself. *Louisiana High School*

9

*Athletics Association, Inc.,* 2012-1471 at pp. 31-32, 107 So.3d at 606; see also *Wayne v. Capital Area Legal Services Corporation,* 2013-2036 (La.App. 1 Cir. 5/2/14), 145 So. 3d 427, 433, *writ denied,* 2014-1149 (La. 9/19/14), 149 So. 3d 243. Although the supreme court acknowledged that the Louisiana High School Athletics Association performs a major policy-making, advisory, and administrative function in an area that is within the primary control of a public body, the supreme court found that it was not a committee or subcommittee of a public body since there was no evidence that it was formed by a public body or that a public body has ever referred business to it for its consideration, investigation, oversight, or action. As such, the supreme court held that the Louisiana High School Athletics Association is not a public body for purposes of the Open Meetings Law. *Louisiana High School Athletics Association, Inc.,* 2012-1471 at pp. 32-33, 107 So.3d at 606-07.

In this case, although the Grievance Committee was appointed by the President-Chancellor, the authority and direction to do so is conferred by the Board of Supervisors. The *Faculty Grievance Procedures* states that a grievant has the right to request that her grievance be transmitted to a Grievance Committee, at which time the Chancellor "shall appoint" faculty members and other unclassified staff members to a Grievance Committee, if a standing Grievance Committee does not already exist. Thus, although the individual members of the Grievance Committee were appointed by the President-Chancellor, the Grievance Committee was formed under the authority and direction of a public body, making it distinguishable from the entity in *Louisiana High School Athletics Association, Inc.* The Grievance Committee is further distinguishable from the entity in *Louisiana High School Athletics Association, Inc.* in that the evidence in the record before us on appeal establishes that the Board of Supervisors (or the President-Chancellor, under the authority and at the direction of the Board of Supervisors)

10

refers business (employee grievances) to the Grievance Committee for consideration, investigation, oversight, or action.

Considering that the primary purpose of the Open Meetings Law is to protect citizens from secret decisions made without any opportunity for public input, as well as the statutory imperative in La. R.S. 42:12(A) to construe the provisions of the Open Meetings Law liberally, we conclude that the Grievance Committee is a committee or subcommittee of the Southern Board of Supervisors, and therefore is a public body under the definition in La. R.S. 42:13(A)(3). See *In re Edward Wisner Donation*, 2014-0027 (La.App. 4 Cir. 9/18/14), 150 So.3d 391, 402, *writs denied*, 2014-2135, 2014-2150 (La. 2/13/15), 159 So.3d 463 (trust advisory committee, formed by the City Council and given authority to control all matters related to the supervision, direction, and administration of a charitable trust endowed to the city, was a public body under the plain language of the Open Meetings Law).

Because we have concluded that the trial court did not err in finding that the Grievance Committee was a public body under the Open Meetings Law, Southern's arguments on appeal that the trial court erred in granting Plaintiffs' request for injunctive and declaratory relief and awarding attorney fees and damages because the Grievance Committee was not subject to the provisions of the Open Meetings Law are without merit.

Plaintiffs also answered the appeal, requesting an additional award of attorney fees for defending Southern's appeal. An increase in attorney fees is usually awarded where a party who was awarded attorney fees by the trial court is forced to and successfully defends an appeal. *Aswell v. Division of Administration, State*, 2015-1851, p. 10 (La.App. 1 Cir. 6/3/16), 196 So.3d 90, 96, *writ denied*, 2016-1263 (La. 11/7/16); 209 So.3d 102. The award of additional attorney fees is to keep the appellate judgment consistent with the underlying judgment. To

11

determine the amount of attorney fees, factors that are considered include "the skill exercised by the attorney and the time and work required on appeal." *Maldonado v. Cannizzaro*, 2018-0177, p. 14 (La.App. 4 Cir. 10/10/18), 257 So.3d 733, 743, *writ denied*, 2018-1749 (La. 1/8/19), 260 So. 3d 591. Since Plaintiffs have successfully defended this appeal, we award additional attorney fees for the work performed defending the appeal in the amount of $1,400.00.

## CONCLUSION

For the reasons set forth herein, the May 13, 2019 judgment of the trial court is affirmed. Additional attorney fees in the amount of $1,400.00 for defense of this appeal are awarded to Plaintiffs, Elaine Lewnau, Christy Moland, Terrilynn Gillis, Marilyn Seibert, and Tom Aswell, and costs of this appeal in the amount of $1,804.00 are assessed to the Board of Supervisors of Southern University and Agricultural and Mechanical College.

**AFFIRMED; ANSWER TO APPEAL GRANTED.**